[Civ. No. 7571. First Appellate District, Division One.—September 1, 1931.]

E. EVANS, Plaintiff and Appellant, v. ROBERT MARSH & CO., INC., et al., Defendants and Appellants.

442

C. H. Sooy for Plaintiff and Appellant.

Clyde C. Shoemaker and J. F. Moroney for Defendants and Appellants.

WARD, J., *pro tem.*—Robert Marsh and Company, a corporation, gave its note, the subject of this action, to United Finance Company for $6,496.86 indorsed by Robert Marsh. This note was transferred before maturity to J. H. Scales, the president of the United Finance Company. Scales, individually, borrowed the sum of $3,500 from the Pacific National Bank giving his promissory note therefor and the $6,496.86 Marsh Company note as collateral security. The Scales' note was renewed. A payment of $750 was made thereon, leaving a balance of $2,750 due from Scales to the Pacific National Bank. No further payment being made by Scales, the bank, after maturity of the Marsh Company note, caused the $6,496.86 note held as collateral to be sold at public auction for the sum of $525 to an employee, E. Evans, the plaintiff in this action. As against Scales and the Pacific Finance Company there were equitable defenses in favor of the defendants. The bank and the plaintiff were innocent holders, not having knowledge of the facts constituting the defenses. Judgment was rendered in favor of plaintiff against Robert Marsh and Company, Incorporated, and Robert Marsh in the sum of $2,750, interest, etc. The court held that the plaintiff Evans, as well as his predecessor, the bank, would be deemed a holder for value only to the extent of the lien, i. e., the indebtedness owing to the pledgee. Defendant appealed from that portion of the judgment whereby the amount was fixed at $2,750. Plaintiff appealed from the whole of said judgment.

Plaintiff contends that the judgment should have been entered for the full amount of the note, to wit: $6,496.86 and not for the smaller sum which was equivalent to the unpaid balance of the loan from Scales to the bank. If the bank had instituted this action, judgment could only run for the amount pledged. (See sec. 3108, Civ. Code.) When part payment was made by Scales to the bank, the pledged note was security only for the unpaid balance. ■ Where the maker of a negotiable promissory note has a defense not available as a bar to a recovery by the pledgee, but good as against the pledgor, the pledgee will be allowed to recover only to the extent of the debt for which the collateral, is held as security. If the bank assigned this note to a stranger, the stranger could take only the rights held by the assignor. ■ The plaintiff in this action was not a stranger but a note teller in the Pacific National Bank, the pledgee. The note was sold to the plaintiff but he did not pay and the bank did not receive anything for the collateral note. Plaintiff is the nominal but the real holder of the note is the bank. Plaintiff did not buy this note in good faith for the full amount or face of the note. He is not therefore a holder in due course for the full value of the note. (See sec. 3133, Civ. Code.) Plaintiff simply stands in the position as the nominal holder of collateral security, the property of the bank. He may be considered a *bona fide* holder of the note as the agent of the bank, but the bank's property right in the collateral note is limited to the sum of the unpaid balance upon the loan note from Scales to the bank.

Plaintiff contends that the purchaser of a collateral note, sold in foreclosure of a pledge is entitled to recover the full amount of the collateral note and cites *Woolf* v. *Clark*, 17 Cal. App. 696 [121 Pac. 407]. In that case the defendant gave a promissory note to one Nicklaus for $1,000. Subsequently the payee transferred the note to a bank as collateral security for a loan to him. The amount of the bank's loan to Nicklaus is not stated in the opinion so we assume it was for a like amount, namely $1,000 and we are warranted in this assumption by the following quotation from that opinion. " . . . the maker of the note not being shown to be in any way prejudiced by the transfer and sale of the note cannot be heard to complain." In that case if

there were equitable defenses against the payee of the note and the collateral was in excess of the loan made by the bank to the payee of the collateral note, the maker would have been materially prejudiced. In *Shafer* v. *Spruks,* 226 Fed. 922, and *Turner* v. *Metropolitan Trust Co.,* 207 Fed. 495, equitable defenses against the payee were not interposed. In *Turner* v. *Metropolitan Trust Co., supra,* the opinion holds that the pledgee may sell "his own interest and all the right which the pledgee could have empowered him to sell at the time the contract of pledge was made". In the case at bar the bank may only sell the collateral because it did not have knowledge of the equitable defense of the maker. The pledgor, Scales, could not have legally empowered the pledgee to sell the $6,496.86 note because the note was obtained from the defendants by reason of false and fraudulent representation and inducements and the court so found. In *Burns* v. *New Mineral Fertilizer Co.,* 218 Mass. 300 [115 N. E. 1074], the effect of existing equities was considered and the court held that when the pledgee sells and the purchaser buys in good faith third party notes held as collateral that the purchaser buys under the pledgee's rights and can enforce the amount of the note although he bought for less than par. The question of equitable defense, that is, that the collateral note was made without consideration, did not enter the case. The other citations submitted by plaintiff are not parallel with the case at bar.

The $6,496.86 note was executed without consideration. The bank, without knowledge of its fraudulent character, received it as collateral and thereby became an innocent holder to the extent of $2,750. By the judgment rendered herein the law decrees to it the right to a just, proper, and exact compensation. By selling to its own agent, it sold to itself and sold only the rights it theretofore possessed. We cannot hold that by going through the form of an auction it could gain equitable rights theretofore nonexistent. To do so would be an approval of the use of the provisions of the code, adopted in part for the protection of lenders as a means to infringe upon the rights of others, namely, the defendant who made this collateral note through deception and fraud and had a good equitable defense against all parties up to the time that the bank as an innocent holder

could obtain judgment to the extent of its lien. *Bell* v. *Bean,* 75 Cal. 86 [16 Pac. 521], was not a case of sale but of assignment; however, the principle involved is the same as the case at bar. The defendant in that case was induced to execute a note because of threats made by the payee upon a claim for damages although the defendant was not liable. A renewed note was made and pledged by the payee to the plaintiffs as security for a smaller amount borrowed by the payee. The court gave judgment for the lesser sum, and at pages 90, 91 the court said ''We do not perceive how that tribunal could have rendered any other judgment than it did . . . They are fully reimbursed for all they can claim by virtue of the security they held, . . . '' ▉ In the defendant's appeal from the judgment, it is contended that the Pacific National Bank of San Francisco was not a holder of the note in due course, having been put on notice by the fact that Scales, as an officer of United Finance Company, was pledging the company's note as security for his own personal obligation. Section 3140 of the Civil Code provides as follows: ''Every holder is deemed *prima facie* to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as holder in due course.'' But the last-mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title. There was evidence in the case of fraud practiced by the United Finance Company upon the Marsh Company. ''Upon proof by the defendant of fraud or illegality in the inception of the instrument, the burden is cast upon the indorsee to show that he is an innocent holder. This he may do by showing that he purchased the instrument before maturity or from an innocent indorsee for value in the usual course of business. When this is done, unless the evidence shows that the instrument was taken by the plaintiff under circumstances creating the presumption that he knew the facts impeaching its validity, the burden is cast upon the defendant to show, if he would defeat the plaintiff in his action, that plaintiff took the instrument with notice of defendant's equities.'' (19 Cal. Jur., at p. 1039.) Irrespective upon which side the burden rested from all of the facts and cir-

cumstances in this case and in particular upon the testimony of witness Wilson, we approve of the court's finding that the bank had no knowledge of the fraud perpetrated by the finance company upon the defendant Marsh Company.

■ We cannot approve of the court's finding that the note was presented for nonpayment and that due notice of presentment and nonpayment was given to each of the indorsers and that they were duly notified that the holder of said promissory note would look to them for payment. This evidence admitted over well-timed and well-grounded objections of the defendant consisted of a copy of a communication from the Pacific National Bank to the Merchants National Trust and Savings Bank of Los Angeles inclosing the note for collection with directions of protest for nonpayment. At best this was secondary evidence without a proper showing for its introduction. The reply, presumably from the Los Angeles Bank, was admitted without any identification of its authorship. Finally, a copy of the notice of protest, not properly identified and not authenticated was introduced. Section 795 of the Political Code provides as follows: "The protest of a notary, under his hand and official seal, of a bill of exchange, or promissory note, for nonacceptance or nonpayment, specifying: the time and place of presentment; the fact that presentment was made and the manner thereof; the cause or reason for protesting the bill; the demand made, and the answer given, if any, or the fact that the drawee or acceptor could not be found, is *prima facie* evidence of the facts recited therein." The copy of notice of protest does not specify the manner of presentment or the place of presentment. If the original contained the seal of the notary then it was not a true or correct copy. Referring to section 795 of the Political Code the court in *Whitcomb* v. *Huse,* 37 Cal. App. 248 [173 Pac. 597], said: "The section makes the 'protest' *prima facie* evidence of things of which it ordinarily would be no evidence at all. It allows a departure from the usual rules of evidence, and those who would avail themselves of its provisions must, therefore, bring themselves clearly within its terms." The presentment must be made at the address given or at the usual place of business or residence at a reasonable hour, etc., (see Civ. Code, secs. 3153, 3154). The record is silent as to any notice of dishonor given the defendant Robert

Marsh. The judgment against Robert Marsh individually must be reversed and this cause remanded with direction to the trial court to permit the plaintiff to attempt to supply the deficiency of evidence relative to the notice of presentment and nonpayment and to determine therefrom whether or not defendant Robert Marsh under the provisions of section 3170 of the Civil Code is entitled to be discharged from liability. Otherwise, the judgment as entered will stand affirmed. Each party to bear his own costs on this appeal.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 1, 1931, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 29, 1931.