[Civ. No. 646. Fourth Appellate District.—December 9, 1932.]

THE FIRST NATIONAL BANK OF TUSTIN (a Corporation), Respondent, v. CLAYTON H. LANDRETH, etc., Appellant.

Charles D. Swanner for Appellant.

Head, Wellington & Jacobs for Respondent.

AMES, J., *pro tem.*—This is an action based upon two negotiable promissory notes. The first cause of action alleges the execution of a promissory note on the twentieth day of October, 1929, by defendant to one William W. Ross in the sum of $1,065.84, payable six months after date. It is then alleged that subsequently thereto said promissory note was duly assigned and delivered to the plaintiff and that plaintiff is now the owner and holder thereof and that the said note is due and unpaid. The second cause of action, which was filed as an amendment to the complaint by and with the consent of defendant after the case was at issue, counts upon another promissory note executed by appellant in the sum of $4,072, bearing the same date as that borne by the promissory note in the first cause of action, made payable to the same payee and due at the same time. It is then alleged that subsequently thereto on April 21, 1930, said promissory note was duly assigned to plaintiff and that plaintiff was the owner and holder thereof and that the same was due and remained unpaid.

In his answer the defendant admits the execution and delivery of the promissory notes sued on to Ross; denies that the notes have not been paid and that the plaintiff is the owner and holder of the notes. Defendant pleads affirmatively that the two notes sued on, together with other promissory notes and securities, were pledged to plaintiff by William W. Ross as security for the payment of a promissory note executed by Ross to the plaintiff and that subsequent to the maturity of the notes plaintiff purchased the same at a sale thereof as pledged property of Ross. The answer further alleges that on the fourth day of April, 1930, prior to the maturity of the notes and while they were held by plaintiff as pledgee, by an instrument in writing Ross, the payee named therein, canceled the same, and that the consideration for said notes, consisting of certain motor-trucks, was returned to Ross; and that at the time plaintiff acquired title to the notes there was nothing due or owing from defendant to Ross, and that the consideration for said notes had failed.

The court found in favor of the plaintiff and further found that the promissory notes sued on, together with other promissory notes and securities, were pledged to the plaintiff on or about the eighteenth day of March, 1930, prior to the date of their maturity; that plaintiff had received the promissory notes as collateral security without notice of any rights and equities between Ross and the defendant, and that they were sold and delivered to plaintiff on the twenty-first day of April, 1930, under and in accordance with the terms, powers and authorities set forth in the collateral agreements under which Ross had delivered the notes to plaintiff, and that at that time Ross was indebted to plaintiff in the sum of approximately $21,159.76, including the notes sued on and other items of indebtedness. Judgment in favor of plaintiff was entered in accordance with the findings of fact.

At the trial the president of the plaintiff bank testified that the plaintiff held a note of Ross in the sum of $10,000, which was a renewal of a former note; that on the eighteenth day of March, 1930, Ross executed to the plaintiff a written agreement in which he pledged to the plaintiff the two notes sued on, together with other promissory notes and certain shares of corporate stock as security for the payment of such notes. The pledge agreement contained the following provisions:

" . . . the undersigned on default in payment of this note at maturity hereby authorize and empower said bank, its successors or assigns, to sell, in whole or in part, without any previous demand on or notice to the undersigned, through brokers' board or at public or private sale, with the right to said bank, its successors or assigns to become purchaser at any such sale of the whole or any part of such collaterals."

Plaintiff also introduced in evidence a so-called "General Pledge Agreement" executed by Ross to plaintiff on the nineteenth day of July, 1929, which provided, among other things, for the future delivery by Ross, as pledgor, to plaintiff, as pledgee, of personal property as security for indebtedness then existing or which might be thereafter created. This agreement expressly vested in plaintiff, as pledgee, the power of sale of all such security, including

negotiable instruments, and authorized plaintiff to sell the same without notice and at either public or private sale.

It further appears from the evidence that on the twenty-first day of April, 1930, the constable of the township where plaintiff bank was located conducted an auction sale at his office, of the notes sued on and the other promissory notes and securities which Ross had pledged to the plaintiff. At the time of the sale Ross was indebted to plaintiff in a sum in excess of $21,000, including the $10,000 note and other items. No notice had been given of the time or place of such sale, defendant had not been notified thereof, and at the sale the notes sued on, together with five other promissory notes, were bid in by and sold to the plaintiff for the sum of $1,000, and certain corporate stock which plaintiff held as pledgee to secure the payment of the notes was sold separately to plaintiff at the same time, for $10,000, which amounts were credited on Ross' account with plaintiff.

█ Appellant first contends that the sale was void as a pledgee's sale because the same was not given pursuant to notice to the public and that the provisions of the statute with reference to sales of that character were not complied with. The provisions of the Civil Code with respect to notice of such sale are contained in sections 3002 and 3005, which are respectively as follows:

"3002. A pledgee must give actual notice to the pledgor of the time and place at which the property pledged will be sold, at such a reasonable time before the sale as will enable the pledgor to attend."

"3005. The sale by pledgee, of property pledged, must be made by public auction, in the manner and upon the notice of sale of personal property under execution."

None of the foregoing provisions of the code was complied with in this action. However, the code itself, in section 3004, provides that a demand of performance may be waived by the pledgor by contract and it is expressly provided by section 3003 that notice of sale may be waived by the pledgor at any time.

In the case of *Williams* v. *Hahn*, 113 Cal. 475 [45 Pac. 815, 816], a quantity of wine was pledged to secure the payment of a note to the payee. The language of the agreement, under which the wine was pledged, was similar

to that contained in the agreement in the instant case, and provided as follows: "I hereby waive demand of payment of said note, and irrevocably authorize and empower said W. B. Bourn, or his assigns, to sell and dispose of the above-described property, or any part thereof, at public or private sale, with or without notice to me of any such sale . . . " Upon the maturity of the note the wine was sold without notice, but the court held that such notice to the pledgor had been expressly waived, and authorized a private sale by the provisions of the agreement itself. "The sale by the plaintiff," says the court, "under the authority given by the defendant in the note itself, has the same effect as though it had been made under the provisions of the Civil Code." The same rule is announced in *Williams v. Parker,* 30 Cal. App. 71 [157 Pac. 550], and *Williams v. Youtz,* 178 Cal. 107 [172 Pac. 383].

Appellant relies upon the case of *Lowe* v. *Ozmun,* 3 Cal. App. 387 [86 Pac. 729], which was an action brought by the pledgor for conversion of certain corporate stock which had been pledged by defendant's testator to secure the performance of an obligation under an agreement authorizing the pledgee to sell the same at public or private sale without advertising, demanding payment, or giving notice of such sale, and authorizing the pledgee to become the purchaser. In that case the Supreme Court affirmed a judgment in favor of plaintiff upon the ground that the private sale authorized by the contract should have been conducted in the manner usually and ordinarily followed in relation to private sales of property and that the sale as it had been conducted constituted a mere taking over of the property without any agreement with another competent to contract. That was an action brought by the pledgor for the unlawful conversion of his property. In this case the rights of Ross, the pledgor, are not involved, and this defense which might have been available to Ross cannot be invoked by defendant.

██ Appellant further contends that the sale of the notes sued on was void for the further reason that a pledgee cannot sell any evidence of debt pledged to him except the obligations of government, states or corporations, as provided by section 3006 of the Civil Code. This contention is answered by the decision in the case of *Woolf* v. *Clarke,*

17 Cal. App. 696 [121 Pac. 407]. That case holds that that section of the Civil Code was enacted for the benefit of the pledgor; that a sale of a promissory note as to him is unauthorized; but, says the court: "the maker of the note not being shown to be in any way prejudiced by the transfer and sale of the note cannot be heard to complain". In that case, as in this, the pledgee received the note in due course before maturity for value and without notice of any infirmities, actual or constructive, or any equities that may have existed between the pledgor and the maker.

Appellant contends that the case of *Woolf* v. *Clarke, supra*, was reversed in the case of *Evans* v. *Robert Marsh & Co., Inc.*, 116 Cal. App. 441 [2 Pac. (2d) 882]. That case merely holds that where the maker of a negotiable promissory note has a defense not available as a bar to a recovery by the pledgee, but good as against the pledgor, the pledgee will be allowed to recover only to the extent of the debt for which the collateral is held as security. But the extent of the debt for which the collateral was held as security in this case was in excess of $21,000 and plaintiff is therefore not barred from a recovery of the entire sum due on defendant's notes.

We think that the auction sale by the constable without notice was sufficient to transfer the title of the notes to the plaintiff and to support the finding of the trial court that the notes were sold and delivered by plaintiff to itself on the twenty-first day of April, 1930.

But assuming that the sale was for any reason advanced by appellant invalid, still the plaintiff is not prejudiced by such void sale. If it did not acquire title to the notes by virtue of the auction sale of April 21, 1930, it still held the title to the notes as a holder in due course. It has been held that where a note is taken as collateral security for a pre-existing debt owing to the pledgee by the indorser on the note so hypothecated, without notice of any infirmities in the note or any defenses thereto, the indorsee is the holder for value in the usual course of business (*Williams* v. *Walker*, 66 Cal. App. 672 [226 Pac. 939]; *Evans* v. *Robert Marsh & Co., Inc., supra*), and it is immaterial in this case whether plaintiff acquired its title to the notes as purchaser at a pledgee's sale, or whether it was a holder in due course and before maturity.

Nor is the fact that it acquired title as a purchaser at the pledgee's sale after the maturity of the note of any value to appellant. If it acquired title from itself as such pledgee and as such pledgee was a holder in due course before maturity, it acquired the notes free from any defenses which would have been available in an action brought by the payee. (Civ. Code, sec. 3139.)

The judgment appealed from is affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 23, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 6, 1933.