Tampa Investment and Securities Company, Defendant in Error, v. Orville J. Taylor, Plaintiff in Error.

**Gen. No. 36,746.**

Opinion filed December 11, 1933. Rehearing denied and opinion slightly modified December 27, 1933.

FRANCIS X. BUSCH and JAMES J. MAGNER, for plaintiff in error.

MCCULLOCH, MCCULLOCH & MCLAREN, for defendant in error.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

In an action in assumpsit upon two promissory notes and upon trial by jury, the court at the close of all the evidence, upon motion of plaintiff, directed the jury to return a verdict in favor of plaintiff for the sum of $7,850, and overruling motions of defendant for a new trial and in arrest, entered judgment on the verdict.

Defendant contends the court erred in refusing and rejecting evidence offered by defendant.

The notes in question were executed at Tampa, Florida, December 15, 1925, are for $2,500 each, to the order of "Carl P. Fish, trustee," draw interest at the rate of eight per cent per annum, payable semiannually, and are signed:

"Orville Taylor
R. R. Demeter
As trustees."

Each of the notes is indorsed on the back:

"Carl P. Fish,
trustee,
C. P. Fish."

The notes were executed and delivered to the payee Fish in payment of the purchase price of real estate in Florida, sold by Fish as trustee to a syndicate composed of defendant Fish himself and other persons. Taylor and Demeter took title to the real estate for the syndicate. Thus Fish was vendor trustee in the transaction and trustee payee of the notes, as well as a beneficiary member of the purchasing syndicate. The purchase price was $100,000. Fish received $40,000 in cash, notes of Taylor and Demeter as trustees for $30,000, secured by a first mortgage on the real estate sold, and notes of the same trustees for a like amount, secured by a second mortgage on the same property. The notes here sued on are a part of the last series. Thus Fish as vendor and payee and beneficiary had full knowledge of the entire transaction.

The evidence for plaintiff tends to show that one O'Berry was indebted to the Exchange National Bank, which held notes of Fish as collateral, and that one of these notes for the amount of $10,000 had matured June 23, 1926. Fish and O'Berry went to the bank, and Fish paid $8,000 in cash on his note and gave a note to O'Berry for the balance of $2,000. The three notes were then delivered to the bank as additional security for O'Berry's debt.

Mr. Perry, an officer of the bank, who arranged the transaction, says he made no inquiry about the words, "as trustees" appearing on the note of defendant. These notes taken by the bank June 23, 1926, were held by it until the latter part of June, 1928, when the bank adjusted O'Berry's debt, receiving the $2,000 note of Fish with the notes sued on as collateral. The bank then sent the notes to Chicago to be presented for payment, which was refused, whereupon, after notice by mail, the bank on October 29, 1928, sold these two notes to plaintiff for $25. Plaintiff is and then was a subsidiary of the bank. The secretary of plaintiff was the cashier of the bank. The stock of plaintiff was held for the benefit of the stockholders of the bank, and a number of the officers of the bank were also officials of the plaintiff corporation.

Defendant offered to prove that pursuant to an oral agreement and understanding between him and Fish, defendant executed the notes in behalf of certain individuals who were then made known to Fish, and that it was agreed defendant was not to be personally liable thereon; that this agreement was made between Fish and Taylor at Tampa, Florida, in several conversations which were had there between Taylor and Fish in the presence of third persons, and also on other occasions when no one except Taylor and Fish was present; that the notes sued on, the mortgage and the declaration of trust were prepared by T. Paine Kelly,

Florida counsel, were then mailed to defendant at Chicago for his signature, were signed there by him and deposited in the United States mails and mailed back to T. Paine Kelly for delivery to the payee, Carl P. Fish, trustee; that the notes sued on were two of a series in the amount of $30,000, secured by a mortgage executed with respect to land located in the city of Tampa, Florida; that this ground was purchased by a group of individuals consisting of Speidel, Bischof, Hegeman, Carl P. Fish, R. R. Demeter and defendant Orville J. Taylor; that it was expressly understood among these parties that in signing the two notes sued on, defendant was not to be personally responsible for the payment of them; that the interests of the group were: Carl P. Fish, the payee, a one-tenth interest, R. R. Demeter a one-tenth interest, Mr. Bischof a one-fifth interest, Speidel a one-fifth interest, Hegeman a one-fifth interest, and Orville J. Taylor a one-fifth interest; that whenever any instalment of interest on the principal notes became due, Taylor was called upon by Fish, the payee, for only a one-fifth part of the then maturing instalments of principal and interest, respectively; that all of the notes of the series were executed in the same manner as the two notes sued on; that in conversations held between Taylor and Fish in Chicago, while the notes were in the hands of the bank in Florida, Fish told Taylor that he had delivered these notes to the bank and had explained the whole transaction to the bank at the time the notes were delivered to it; that he had talked with a Mr. Griffin in the bank and told him who the members of the syndicate were and of the understanding as stated between himself and defendant Taylor.

Defendant further offered to prove that in conversations with Fish and other persons of the syndicate in Tampa, Florida, in the week commencing November 22, 1925, when the arrangements had been made for the

purchase of the property, he stated that he wanted information as to the method under which the transaction would be handled; that he was informed by Fish and other persons that the normal procedure was that of having a trustee appointed; further, that defendant would testify that he stated that he was acting in essentially the capacity of a principal and in no sense as an attorney; that he was not familiar with the methods of handling real estate transactions in Florida; that if this transaction were in Chicago it would be escrowed, guaranty policies issued, and it would be handled with great care and caution; that he was informed by Fish and others in this group that transactions to the number of 15 to 20 a day would be handled on one piece of property; that to his recommendation that a bank be appointed as trustee the objection of delay and expense was offered; that he then called upon Fish and his group to have the best real estate lawyer that could be found in Tampa handle the matter; that Taylor and Fish went to the office of T. Paine Kelly, the lawyer recommended by Fish; that Kelly told Taylor that there was no personal liability under a trusteeship of the character involved; that it was not necessary to even so much as sign the notes as trustee, as long as on the face of the document the words "as trustee" appeared; that Kelly told Taylor, in the presence of Fish, that there could be no recovery even so much as against a syndicate in the transaction, that the property itself was security for the loan and would be taken back under the law and any deficiency canceled; that the documents were prepared by Kelly and sent to Taylor in Chicago; that when the documents were received by Taylor in Chicago they did not bear the words "as trustee" on the face of the notes, and that Taylor changed these notes, adding the words "as trustees" and returned them to Kelly for delivery in Florida to Fish; that in 1928, for the first time, Taylor

was notified by the Exchange National Bank that it held these notes and demanded payment; that in reply Taylor September 11, 1928, sent a letter to the bank disclaiming personal responsibility; that thereafter in conferences with Fish in Chicago and in New York, Fish told Taylor in substance that he had arranged the transaction with the bank and that defendant need not give any concern to it; that Fish further told Taylor that the bank held a mortgage on Fish's house and that the bank was at all times familiar with the whole transaction. This offered evidence, considered with that received, tended to show that the Exchange National Bank, when it took the notes from Fish, had full knowledge of the entire transaction and the holder was to look solely to the land for payment of the notes.

The court refused and denied this offer of proof and directed a verdict as stated.

An examination of the briefs of the parties discloses that they agree that where the maker of a negotiable instrument has a good defense as against the payee, a pledgee of the instrument in a suit thereon may recover only the amount actually loaned or expended by him upon the security of the collateral. Plaintiff, however, contends that the rule is not applicable in any case until after defendant has established a defense as against the original payee, and we think that contention is sustained by the authorities. *Tooke v. Newman,* 75 Ill. 215; *Henderson v. Davisson,* 157 Ill. 379; *Burns v. Landrum,* 238 Ill. App. 191; *Jones v. Central Hanover Bank & Trust Co.,* — Fla. —, 147 So. 895. We think, however, it may not be held that plaintiff by its purchase of these notes for the practically nominal sum of $25, got any better title than that of the vendor bank. The sale took place long after the maturity of the notes. The real beneficial ownership of the notes after the sale was in the same persons as before, namely, the owners of the stock of the bank for whose

benefit all the stock of the securities company was held. *Evans v. Marsh,* 116 Cal. App. 441, 2 P. (2d) 882.

The real question therefore turns on the question of whether the oral evidence offered was wrongfully excluded, or whether defendant could by parol evidence establish a good defense as against his payee, Fish, or a holder taking with notice.

Plaintiff contends stoutly for the proposition that a maker who executes an instrument as trustee binds himself personally and no one else, upon the theory often stated in the cases, that a trustee is a principal and not the agent of any other, and that when such a trustee contracts he is personally and individually obligated to perform, after which he is entitled to reimbursement out of the trust fund. In support of this theory plaintiff cites a large number of cases, such as *Wahl v. Schmidt,* 307 Ill. 331; *Austin v. Parker,* 317 Ill. 348; *Schumann-Heink v. Folsom,* 328 Ill. 321; *Taylor v. Mayo,* 110 U. S. 330, and *Wilson v. Bodamer,* 261 Ill. App. 23, where this court so held in suits which were not based on negotiable paper.

Plaintiff further maintains that parol evidence is not in such case admissible for the purpose of showing that a maker who thus signs is not in fact personally liable, and in support of this contention cites the Illinois cases of *Powers v. Briggs,* 79 Ill. 493; *Hypes v. Griffin,* 89 Ill. 134; *Scanlan v. Keith,* 102 Ill. 634, and similar cases based on negotiable notes. It also contends that the law of Florida is similar.

The controversy turns upon the construction to be given to section 20 of the Uniform Negotiable Instruments Law, which, in identical language at the time of this transaction was in force both in Florida and in Illinois and which has now been adopted in all the States with two exceptions. That section is as follows (see Brannan's Negotiable Instruments Law, Anno., 4th ed., p. 163):

"Where the instrument contains or a person adds to his signature words indicating that he signs for or on behalf of the principal, or in a representative capacity, he is not liable on the instrument if he was duly authorized; but the mere addition of words describing him as an agent, or as filling a representative character, without disclosing his principal, does not exempt him from personal liability." Cahill's St. ch. 98, ¶ 40.

The history which led up to the enactment of this statute in so many of the States is recited in 2 Michigan Law Review 260, and it appears that the language of this section 20 was very largely determined by what the bar generally believed to be the unjust result reached in the case of *Roger Williams Nat. Bank v. Groton Mfg. Co.,* 16 R. I. 504, where the trustees of an estate acting in conformity with the directions of the testator were held personally liable upon a promissory note they had indorsed:

"Amos D. Smith & Co.  
  Francis M. Smith,      Trustees Estate of  
  Charles Morris Smith      Amos D. Smith."

Section 20 changed the previous rule that a name followed by a designation as to some relationship to another would be considered only *descriptio personae* and the maker therefore personally liable. Professor Brannan says (Brannan's Negotiable Instruments Law, 4th ed., p. 164):

"The plain language of this section indicates that it was the intention of the draftsman and the commissioners to clear up the unnecessary and unpardonable confusion caused by the failure of some of the courts to exercise a little common sense and to recognize mercantile usage. Much of the difficulty found in this subject is purely manufactured and would not trouble a business man for a moment."

Defendant admits that under a plain construction of this section he would be prima facie personally liable

because while the note discloses that he was acting in a representative character it does not disclose the principal for whom he acted. However, defendant contends that his signature as made creates an ambiguity, which, as between the original parties to the paper, or those taking it with notice, may be explained by parol evidence.

The question is purely one of statutory construction, and cases (of which there are many) where the statute was not called to the attention of the court or considered, are of little value. In *National City Bank of Chicago v. National Bank of Republic of Chicago,* 300 Ill. 103, our Supreme Court has laid down the rule which should be followed in construing this statute. It says:

"In order to keep the law as nearly as may be uniform, the courts of all the States should keep in mind the spirit and object of the law and should give to the language of the act a natural and common construction, so that all might be more likely to come to the same conclusion."

In *Megowan v. Peterson,* 173 N. Y. 1, the plaintiffs sued a defendant upon a note which was signed, "Charles G. Peterson, Trustee." Peterson was in fact the trustee appointed by creditors to liquidate the business of Johnson & Peterson. Upon the trial Peterson produced oral testimony tending to show that he acted as such trustee for the completion of certain buildings begun by the insolvent firm, and for that purpose purchased lumber of the plaintiffs under an express agreement that they would accept his note as such trustee. Plaintiffs testified to the contrary, and at the conclusion of the evidence the court, upon application of the defendant, dismissed the complaint upon the ground that no cause of action had been established against defendant, while the plaintiffs asked that they be permitted to go to the jury upon the controverted fact as

to whether the plaintiffs gave credit to the defendant in his representative capacity or as an individual. The court construed this section of the Negotiable Instruments Law as applicable, and the plaintiffs contended that the defendant was liable because his representative character was not disclosed "upon the face of the note." The court held that this would be true so far as innocent purchasers for value were concerned, but as to the payees named in the note a different rule would prevail. The case of *First Nat. Bank of Brooklyn v. Wallis,* 150 N. Y. 455, was cited. The court further held that the parol evidence raised an issue of fact for the jury. The judgment was reversed and the cause remanded for a new trial.

In *Kerby v. Ruegamer,* 95 N. Y. S. 408, the defendants, who as trustees for creditors were completing buildings, executed a note, signing their names, to which was added "as trustees, etc.," and the court on the authority of *Megowan v. Peterson, supra,* again held that although the note upon its face did not disclose that the consideration thereof was for the benefit of creditors, as between the original parties to the paper, this was not necessary and that parol evidence to show the actual facts was admissible.

Plaintiff contends that *Megowan v. Peterson* was illy considered, but the Court of Appeals of New York does not seem to take this view, as shown by the opinion in *New Georgia Nat. Bank v. Lippmann,* 249 N. Y. 307, where construing section 20 on another point, the opinion stated: "Nothing in our present ruling is opposed to what was held in *Megowan v. Peterson* (173 N. Y. 1)."

The highest court of Kentucky agrees with that of New York. *Riordan & Co. v. Thornsbury,* 178 Ky. 324. There a note was signed by five trustees of a Methodist church, each of them adding after his name the word "trustee," and the instrument in no place disclosing

the principal for whom the trustees acted. The court cited 3 R. C. L. 1095, and held the Negotiable Instruments Law applicable, parol evidence admissible, and that the defendants were not personally liable in a suit between the original parties.

The same construction seems to have been put upon this section of the act in New Jersey where, in *Phelps v. Weber,* 84 N. J. L. 630, 87 Atl. 469, it was held that the personal liability was only prima facie and that parol evidence was admissible to show the intention of the parties even against a bona fide holder for value.

In *Gutelius v. Stanbon,* 39 F. (2d) 621, the trustees of a realty trust who signed their names "trustees of the (named) Realty Trust," were held not personally liable under section 20.

In *McFarland v. Shaw,* 45 S. W. (2d) 193, decided by the Commission of Appeals of the State of Texas January 6, 1932, a note was signed:

"Susie L. McFarland
 Surviving Widow of C. S. McFarland
W. S. McFarland
Ethel McFarland
 Sole Heirs of C. S. McFarland, deceased"

It was held that the defendants might show by parol evidence that at the time the note was signed it was agreed that the signers were not to be personally liable. The opinion discusses (with innumerable citation of authorities) the parol evidence rule, cites section 20 of the Negotiable Instruments Act and states that if the issue of an innocent purchaser for value was in the case, the contention of the payee that section 20 is controlling might be true. The opinion also cites with approval *Megowan v. Peterson,* 173 N. Y. 1.

We have not thus far considered cases by the courts in Florida, the *lex loci contractus,* or in Illinois, the *lex fori,* construing this section.

Plaintiff contends that whatever the rule is in other States, parol evidence is not admissible in Florida or in Illinois.

Plaintiff cites *Higgins v. Driggs, Admr.,* 21 Fla. 103 (where an executrix who executed a note, "Ellen F. Adams, Executrix of the Estate of J. S. Adams," was held personally bound before the enactment of the Negotiable Instruments Law), and *Robinson v. Springfield Co.,* 21 Fla. 203 (also decided before the enactment of the Negotiable Instruments Law, where certain notes and a mortgage securing same were executed, "Joseph D. Mitchell, Trustee," and "C. L. Robinson, Trustee," and the makers were held personally liable, no parol evidence being offered.)

In *Sparks Enterprises v. Christman,* 95 Fla. 928, the plaintiff sued on a promissory note executed November 18, 1925. The maker added no words to indicate a representative capacity. He sought to show an oral agreement at the time of execution that the payee would look only to a mortgage given as security for payment. It was held he could not show such agreement on the authority of *Forbes v. Ft. Lauderdale Mercantile Co.,* 83 Fla. 66. The Negotiable Instruments Law was not cited, and this particular section was of course not applicable.

*Phillips & Co. v. Hall,* 99 Fla. 1206, was decided by the Supreme Court May 28, 1930. There the note sued on was signed by five persons who designated themselves as principals and as "Board of Trustees of Methodist Episcopal Church, South, LaBelle, Fla." The signers were held liable as to an innocent holder for value, citing section 20 of the statute. There was no question of parol evidence in the case.

In *Spofford v. Hanna,* 102 Fla. 261, 135 So. 536, in which an opinion was filed as of June 30, 1931, a note and mortgage were executed, "Roy S. Hanna, As trustee only and not individually." A demurrer to the

declaration was sustained upon the ground that it appeared that the instruments were executed in a representative capacity and not as an individual. The opinion cites section 6780 of the Florida law (section 20 of the Negotiable Instruments Act) and states that neither in the note nor in the mortgage was the identity of any principal disclosed, except the maker of the note, Hanna. The opinion states:

"Aside from the effect of this statutory provision, it is a rule *prima facie established* that the payee of the note extended the credit to Hanna, the maker of the note, as there is no other person, corporation, or association designated in the note to whom credit could have been extended. The notes and mortgage in this case were not executed in such a manner as to bind any other individual, association or corporation than the defendant in so far as is disclosed by either of these instruments or by the declaration." *Guthrie v. Imbrie,* 12 Ore. 182, 6 Pac. 664, 53 Am. Rep. 331, was cited. The opinion pointed out that the court was not required to discuss *the question as to whether a plea which disclosed principals known to the plaintiff and bound by the obligations* and alleged the joint or separate liability of the principals would have availed defendant.

In other words, this case holds only what the defendant here admits—that the maker is prima facie personally liable, but does not decide whether oral evidence is admissible as between the original parties and those taking with notice. The inference as shown by a specially concurring opinion, is that parol evidence would have been considered admissible. No previous Florida case seems to have been cited.

In *Anderson v. Ax,* 104 Fla. 294, 139 So. 798, cited, an opinion was filed February 18, 1932. The plaintiff filed suit against Anderson upon his personal promissory note, due one year after date. There was no ques-

tion arising out of the representative capacity of the maker of the note, and while *Forbes v. Ft. Lauderdale Mercantile Co.,* 83 Fla. 66, and other cases in which the parol evidence rule was considered, are cited, there was obviously no question arising under section 20 of the Negotiable Instruments Act, and it is not referred to in the opinion.

In *Luria v. Bank of Coral Gables,* 106 Fla. 175, 142 So. 901, it appeared that the defendant bank, which had become obligated to pay notes executed by one Fowler, undertook to defend by showing an agreement between Fowler and a company that the notes should remain the primary and direct obligation of that corporation. It was held, citing section 6780 of the General Laws of Florida (which is section 20 of the Negotiable Instruments Act):

"Trustees and other fiduciaries may exempt themselves from personal responsibility by using explicit words to show such intention, but, in the absence of such words, they are held bound. *Robinson v. Springfield Co.,* 21 Fla. 203, 224, 225. See, also, *Falsten Realty Co. v. Kirksey* (Fla.) 137 So. 267." There was no question of parol evidence considered in the case, and the authority is not inconsistent with the view that the liability of the maker was only prima facie.

The case of *Hazlett v. Williams,* 76 Fla. 514, which was decided in 1918 after the enactment by the State of Florida of the Negotiable Instruments Act, does not appear to have been cited or considered in this or other cases relied on by plaintiff. There the plaintiff sued upon a promissory note signed:

"W. H. Hazlett, Pres.
A. B. Hazlett, Treas."

and a declaration was filed upon this note in the statutory form upon the theory that the defendants were personally liable. Pleas were filed denying that the

defendant made and delivered the note and averring that it was not their personal obligation but the note and obligation of the Ariel Lumber Co., a corporation, of which plaintiff had notice at the time of the delivery and acceptance of the note. The plaintiff demurred to the pleas and the demurrer was overruled, and testimony in support of the pleas was received upon the trial, which was by jury. The court instructed the jury:

"I further instruct you, gentlemen of the jury, that the Court has ruled that verbal testimony changing the effect of the note in suit is improper, and that you cannot consider any of the verbal testimony objected to, that tended to show that the note was the note of the Ariel Lumber company and not of A. B. Hazlett and W. H. Hazlett as individuals."

It was held that in an action between such parties it was competent to show by extrinsic evidence that the prima facie descriptive words were in fact understood as fixing and intended to determine the character in which the persons using them contracted. The cases of *Brunswick-Balke-Collender Co. v. Boutell,* 45 Minn. 21, 47 N. W. 261, and *Megowan v. Peterson,* 173 N. Y. 1, 65 N. E. 738, were cited. The opinion expressly approves of the language of the New York court in the *Megowan v. Peterson* case and of the law there stated, and the judgment for plaintiff was reversed.

Again, in *Sample v. Wilson,* 101 Fla. 818, 134 So. 549, 139 So. 144, in which an opinion was handed down by the Supreme Court of Florida May 7, 1931, it appeared that Sample had executed his promissory note to Lake Marion Groves Corp., dated April 23, 1925, signed "J. W. Sample, Trustee"; that the corporation indorsed the note to one Arline, who in turn indorsed it to Wilson without recourse; that Wilson claiming to be a holder in due course sued Sample on the note. At the conclusion of the testimony a motion to strike

the evidence offered by defendant and to direct a verdict for plaintiff was granted. The court said that the sole question for determination was whether the defendant's evidence affecting the status of Wilson as a holder in due course should have been stricken in the face of an allegation and supporting evidence that he was not such holder; that Wilson contended that if there was an arrangement between Sample and the initial payee that he, Sample, was not to be personally liable for the payment of the note, Wilson knew nothing of such an arrangement before he purchased it and that it was further contended that a promissory note being a ''courier without luggage, whose countenance is its passport,'' the mere addition of the word ''agent'' or ''trustee' to the name of the obligor without disclosing his principal's identity does not exempt him from personal liability on the note. Section 6780 (section 20 of the Negotiable Instruments Act) was quoted and relied on. The court stated, however, that while the contention in the abstract was sound in that particular case, the question of whether Wilson was a holder in due course was clearly put at issue and was a fact for the determination of a jury; that ''the evidence stricken supports plaintiff in error's contention that Sample's representative character was explained to Wilson when Arline indorsed the note to him (Wilson), and that Wilson was also advised of the agreement between Sample and Lake Marion Groves Corporation to the effect that Sample was in no sense bound personally on the note.'' The opinion says:

''It is also shown that Arline's endorsement was without recourse, that the note was one of a series, that the interest was past due, and that it was signed J. W. Sample, 'Trustee.' If these allegations were true, Wilson was not a holder in due course, as contemplated by law. Section 4725, Revised General Statutes of 1920 (section 6811, Compiled General Laws

of 1927.)'' The opinion states that the probative force of this evidence was for the determination of the jury, and that the order striking it and directing a verdict was error; and the order was accordingly reversed.

This case would seem to be on all fours with defendant's contention as to the construction of section 20. The briefs do not disclose any case in Illinois in which section 20 of the Negotiable Instruments Act has been construed with reference to this question. Some of the opinions relied on were rendered long prior to the enactment of the Negotiable Instruments Law in this State. Some construe contracts not negotiable. Some decided after the enactment of that law do not refer to or consider it. To the first class belong *Powers v. Briggs,* 79 Ill. 493, decided in 1875; *Hypes v. Griffin,* 89 Ill. 134, decided in 1878; and *Scanlan v. Keith,* 102 Ill. 634, decided in 1882. The *Scanlan-Keith* case is interesting, in that it intimates that even under the older law parol evidence might be admissible for the purpose of showing the intention of the parties.

Plaintiff cites *Decowski v. Grabarski,* 181 Ill. App. 279, decided in this court in 1913, several years after the enactment of the Negotiable Instruments Law. The note there was signed:

"Albert F. Grabarski, Pres.

F. J. Tomczak, Secy.''

In a suit upon this note in the municipal court of Chicago, Grabarski and Tomczak filed an affidavit of merits, in which they alleged that they were the president and the secretary, respectively, of a corporation known as "The Bell," and that the note was the obligation of that corporation and not of the defendants individually. The suit had been begun by confession of judgment, but leave was given to make a defense and the judgment to stand as security. Upon trial by the court there was a finding for the plaintiff and final judgment against the defendants. After quoting at length from *Scanlan v. Keith,* this court said:

"In *McNeil v. Shober & Carqueville Lith. Co.,* 144 Ill. 238, it was held that where the makers of the note have signed the same, one as president and the other as treasurer, that *prima facie* it was the note of the individuals, but that it was proper to submit 'the question of fact to the jury, whether they intended to give their individual note, or to execute a note for and on behalf of the corporation only.' " The opinion also quotes from *Thompson v. Hasselman,* 131 Ill. App. 257, as to the danger of entrapment of the unwary by a contrary rule, and stated:

"Applying these general statements to the particular case before us, it may be said that while plaintiff, by the introduction of the note, made a *prima facie* case against the defendants individually, yet the court properly permitted the defendants to introduce evidence outside the note to prove the matters of defense set forth in their affidavit of merits.

"We think it is also clear that if the defendants were successful in establishing the facts as claimed in the affidavit of merits, there could be no recovery against them individually." The judgment was reversed and the cause remanded.

We are cited to *Thayden v. Christiansen,* 246 Ill. App. 380, but find upon examination that the contract there considered was not negotiable, but on the contrary was a contract of employment.

*Herman v. Metropolitan Petroleum Co.,* 253 Ill. App. 536, decided by the third division of this court in June, 1929, is also cited. It appeared in that case that judgment by confession was taken on a note signed:

"Metropolitan Petroleum Co.
By Israel B. Zimmerman
Nat Rue 1606 W. Roosevelt Road."

An appeal was taken by Rue alone from an order of the trial court, which refused to set aside as against him the judgment entered by confession. The Negotiable Instruments Act was apparently neither cited

nor considered, and indeed it was not applicable to the controversy, since it appeared that Rue had signed his own name without any addition from which a supposed representative capacity could be inferred. It is apparent that there was no intention on the part of the court to construe any section of the Negotiable Instruments Act.

*Fronck v. Wroblewski,* 255 Ill. App. 529, construes section 16 of the Negotiable Instruments Act, Cahill's St. ch. 98, ¶ 36, not section 20, which we construe here.

In Daniel on Negotiable Instruments, 7th ed., sec. 300, p. 377, the author summarizes the law construing section 20 of the Negotiable Instruments Act on this point and says:

"The decisions interpreting the statute are not in harmony, some courts holding that although the signature is followed by a word indicating representative capacity, yet, when no obligated principal is disclosed, he cannot escape liability under this law. The weight of authority, however, seems to be that where the trustee has authority, as between the parties or those taking the instrument with notice, it may be shown by parol that the principal for whom the trustee was assuming to act was known. Where the note discloses the name of the principal, as 'We, the trustees of' a named church, and is signed by individual names, the signors are not individually liable. So far as innocent purchasers for value are concerned, however, the representative character of the party must be disclosed upon the face of the note."

*Lex loci contractus* and *lex fori* being as indicated in the foregoing, we hold that the oral evidence offered by defendant in this case was admissible; that the court erred in refusing to receive it. Moreover, under the holding in *Owens v. Nagel,* 334 Ill. 96, the note being payable to Fish as trustee was sufficient to charge the bank with notice that the payee had no right to sell or

dispose of the notes except in accordance with the terms of the trust. The burden was on the plaintiff to show it was so transferred to it. The offer gives the names of the persons for whom the trustees acted in executing these notes and who therefore are bound if there is personal liability.

For the reasons indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*

O'CONNOR and McSURELY, JJ., concur.