[Civil No. 2391.   Filed January 27, 1926.]

[242 Pac. 1009.]

# THE ATLANTIC NATIONAL BANK OF BOSTON, a Corporation, Appellant, v. CHARLES KORRICK, J. J. GOULD and H. F. HUNTER, Co-partners Doing Business Under the Name and Style of KORRICK, GOULD & HUNTER, Appellees.

1. PLEDGES—PRIVATE SALE OF PLEDGE BY PLEDGEE WITHOUT NOTICE TO PLEDGOR NOT INTERDICTED BY LAW—There is no law of Arizona forbidding private sale of pledged property by pledgee without notice to pledgor if they so agree; Civil Code of 1913, paragraph 4143, not interdicting such agreements.

2. PLEDGES—NOTICE OF SALE TO PLEDGOR DISPENSED WITH UNLESS STATUTE FORBIDS.—Parties may by their written agreement dispense with notice of sale to pledgor, unless statute law otherwise provides.

3. PLEDGES—PLEDGEE OF COTTON, IN EXERCISING POWER OF SALE, OWED DUTY TO ACT IN GOOD FAITH.—Where cotton was pledged with power in pledgee to sell security on happening of named contingencies, there existed between parties a trust relation, and pledgee in exercising power owed duty to pledgors to act in good faith.

4. PLEDGES—PLEDGORS MUST ESTABLISH THEIR CONTENTION AS TO GOOD FAITH OF SALE BY PLEDGEE OR THAT PLEDGE WAS WORTH MORE THAN IT SOLD FOR.—Pledgors questioning validity or good faith of sale of pledge under power of sale, or asserting that pledge was worth more than it sold for, must establish their contention.

---

1. Rights of pledgor in respect to sale of collateral bonds and commercial paper, see note in 53 L. R. A. 857.

2. See 21 R. C. L. 690, 691.

5. EVIDENCE—HOW NEWSPAPER QUALIFIED AS EVIDENCE OF VALUE OF COMMODITIES STATED.—To qualify a newspaper as evidence, it should be published for enlightenment of persons dealing in the articles to prove whose value it is offered, and it must be shown that persons generally were in the habit of dealing in such commodity in reliance on its market quotations.

6. EVIDENCE—MARKET VALUE DETERMINED BY ACTUAL SALES ONLY.—Market value is determined by actual sales and not by the asked prices.

7. APPEAL AND ERROR—NO BASIS FOR ASSIGNMENT OF ERROR, WHERE RECORD FAILS TO SHOW RULING ON MOTION.—Where record fails to show that court ever passed on motion for judgment against original plaintiff, there is no basis for assignment of error on refusal to grant it.

8. APPEAL AND ERROR—ORDER NOT BEFORE COURT ON APPEAL NOT REVIEWED FOR ERROR.—Where original plaintiff was nonsuited on its own motion and without objection from defendants, the order cannot be reviewed for error, where it is not before the court on appeal.

9. PLEDGES—ISSUE OF FRAUD AT INCEPTION OF NOTES PROPERLY WITHDRAWN FROM JURY.—Where statements of agent of consignees of cotton that pledgors by consigning cotton would get better price, and that by wiring grade of cotton sale could be made before it reached destination, that brokerage commission would be made up by gain in weight, that consignee and national bank advancing money on cotton were the same thing, were only agent's conjecture, guess, and mere trade talk, and regarded as such by pledgors, who knew that a national bank was making the advances, and that their obligation was to it, and there was no evidence that it was interested further than to make loan, in action against pledgors on notes by transferee thereof, issue of fraud at inception of notes was properly withdrawn from jury.

10. PRINCIPAL AND AGENT—AGENT'S STATEMENT INCOMPETENT TO PROVE AGENCY.—Statements of agents are incompetent to prove agency.

11. TRIAL—CHARGE IGNORING ALLEGED ORAL CONTRACT OF SALE OR CONSIGNMENT HELD NOT ERRONEOUS.—Where written contract between pledgors of cotton and pledgees, under which latter had right to sell cotton at any time, was only contract proved by competent evidence, charge on pledgee's right to sell cotton at

---

5. Newspaper quotations and price lists as evidence, see note in 17 L. R. A. 851.

6. See 10 R. C. L. 1167.

10. See 21 R. C. L. 821.

any particular time *held* not erroneous as ignoring alleged oral contract of sale or consignment.

12. APPEAL AND ERROR—WHETHER INSTRUCTION ON MEASURE OF DAMAGES CORRECT HELD IMMATERIAL.—In suit on notes for advances on cotton, where defendants failed to sustain their contention of fraud and conversion, it was immaterial whether instruction on measure of damages correctly stated the law.

13. PLEDGES—MOTION FOR VERDICT FOR BALANCE DUE AFTER SALE OF PLEDGED COTTON ERRONEOUSLY REFUSED.—In suit against pledgors for balance due after sale of pledged cotton by pledgee under power of sale, where competent evidence did not sustain charge of pledgees' fraud and negligence in sale thereof, nor was news record competent to prove market value during 1923, it was error to refuse plaintiff's motion for verdict.

---

See (1, 2) 31 Cyc., p. 877, n. 64; p. 878, n. 82.   (3) 31 Cyc., p. 877, n. 72.   (4) 31 Cyc., p. 870, n. 94.   (5) 22 C. J., p. 189, n. 23.   (6) 22 C. J., p. 187, n. 10; p. 188, n. 22.   (7, 8) 4 C. J., p. 65, n. 60; p. 683, n. 11 New.   (9) 31 Cyc., p. 871, n. 1 New.   (10) 2 C. J., p. 935, n. 27; 7 C. J., p. 808, n. 28, 29.   (11) 38 Cyc., p. 1618, n. 35.   (12) 4 C. J., p. 650, n. 37; p. 651, n. 40.   (13) 38 Cyc., p. 1575, n. 22.

APPEAL from a judgment of the Superior Court of the County of Maricopa. F. C. Struckmeyer, Judge. Judgment reversed and cause remanded, with directions that judgment be entered for plaintiff.

Messrs. Kibbey, Bennett, Gust, Smith & Lyman and Mr. Harold Baxter, for Appellant.

Messrs. Hayes, Stanford, Laney & Allee, for Appellees.

ROSS, J.—Our attention being called to some inaccuracies of statement, and an entire omission to pass upon appellees' cross-assignments, this opinion and decision is in lieu of the former one.

This case is very similar to the case of the *Atlantic National Bank of Boston* v. *Moore, ante,* p. 346, 241 Pac. 601. It involves the same parties plaintiff and the same kind of transaction. It is different in the detail of parties defendant, the amount of cotton

sold, size and date of notes, etc.; but the transactions were the same in essence. As in that case, the plaintiff and its predecessor in ownership of notes sold the pledged cotton under the powers given in collateral notes, and, after crediting amount realized over and above expenses, applied the balance on notes, and defendants failing and refusing to pay balance, brought this suit to recover the same. (As in the Moore case, so in this, when we speak of the "plaintiff," we mean the Atlantic National Bank of Boston.)

The defendants set up several defenses to the complaint and also a counterclaim. The court, in submitting the case to the jury, either because they were without support in the evidence or the law, omitted all such defenses and counterclaims except one. The issue raised by the answer and submitted to the jury was whether the plaintiff in exercising the power of sale in notes had been guilty of fraud and negligence in the handling and disposition of the cotton; it being alleged, in substance, that plaintiff had wilfully, designedly and negligently retained the cotton until such time as plaintiff could have opportunity to sell it on a weak market in order to favor its customers, and, further, that the cotton was sold at a price far below the market price.

The court refused to grant plaintiff's motion for a directed verdict at the close of the whole case; said motion being based upon a failure of evidence to support the defenses of fraud and negligence. Whereas the plaintiff's demand was for about a thousand dollars, the jury's verdict was for only one hundred dollars.

Plaintiff has appealed and assigned as error the court's refusal to direct a verdict in its favor; the admission in evidence of a copy of the "Daily News Record" to prove the value of Pima cotton during

the year 1923, said issue being dated January 15, 1924, and purporting to carry a summary of the weekly average market value of such cotton for 1923; the misdirection of the jury as to the law; and the refusal of certain requested instructions.

The status of the parties hereto with reference to the cotton was that of pledgor and pledgee. That is made to appear from the pledge agreement in note. (See copy of note as set out in opinion in Moore case.)

It is assumed in the pleadings, and was so treated in the trial. Although defendants in their answer and counterclaim alleged fraud and false representations on the part of plaintiff in the inception of the pledge contract, and offered evidence in support thereof, all such questions, as before stated, were taken from the jury because of failure of proof. The only questions presented by plaintiff's assignments for our consideration are the ones based on the issue of fraud and negligence in the handling and disposition of the pledged property. It is therefore settled beyond cavil that defendants signed collateral notes for the amounts alleged and in the same instrument turned over to the plaintiff the cotton mentioned as collateral security, with the right and power to sell and dispose of the same at any time or times after notes became due, either at private or public sale, and without notice to the defendants. It doubtless was in the contemplation of the parties that plaintiff might use that power of sale even before the cotton reached the eastern market, since the notes are all demand notes.

And there is no law forbidding a private sale of pledged property by the pledgee without notice to the pledgor if they so agree, as they have here. The method provided by paragraph 4143 of the Civil Code of 1913, of giving notice of the sale to the pledgor and

by posting and publication does not purport to interdict agreements for sales without notice. It is, we think, well settled that the parties may by their written agreement dispense with notice of the sale to the pledgor, unless the statute law otherwise provides. *Ardmore State Bank* v. *Mason,* 30 Okl. 568, 39 L. R. A. (N. S.) 292, 120 Pac. 1080; *In re Mertens,* 144 Fed. 818, 75 C. C. A. 548; Jones on Collateral Securities, 3d ed., §§ 617a, 611, 611a, and 611b. It is undisputed that the price of cotton declined from the date of the consignment, and that when it reached the eastern market it was not worth as much by several points as when shipped. It is also undisputed that plaintiff had asked defendant to put up additional collateral in October, 1921, on the ground that the cotton had declined so much as not to be adequate security for advances made, and that defendant paid no attention to such request. The purpose of providing for additional security was twofold: First, to keep the value of the pledge equal or greater than the loan or advancement for the protection of the pledgee; and, second, to prevent the sacrifice of the pledge upon a weak market for the protection of the pledgor. Plaintiff did not sell any of the pledged cotton, although it had the right to do so, until October, 1922, and then it sold only four bales. The rest, six bales, was sold in October and November, 1923. That sold in 1922 went for 34½ cents, and two bales of that sold in 1923 went for 32 cents, two bales for 32½ cents, and two bales for 34½ cents. Immediately after each sale a complete itemized statement of the amount realized and expenses was mailed to defendants, so that they were fully informed as to what the plaintiff was doing with the pledge.

That there existed between the parties a trust relation, and that pledgee in exercising the power of

sale owed a duty to the defendants to act in good faith, cannot be questioned.

"But where the pledgee makes the sale in the manner provided by law, and in accordance with the conditions of the contract, and it is not shown that he did, or caused to be done, anything for the purpose of preventing a fair sale, the pledgor has no right to complain. Under such circumstances the pledgee may take the market as he finds it and exercise his power of sale accordingly." *Williams* v. *Parker,* 30 Cal. App. 71, 157 Pac. 550.

There is affirmative evidence that the pledged property was sold at the prevailing or market price on the dates it was so sold. This was testified to by the broker who sold the cotton and the purchasers thereof. The rule is that the pledgor questioning the validity or good faith of a sale of the pledge under a power of sale, or asserting that the pledged property was worth more than it sold for, must establish his contention. It is stated in *Hiscock* v. *Varick Bank,* 206 U. S. 28, 51 L. Ed. 945, 27 Sup. Ct. Rep. 681, as follows:

"We are at a loss to understand how fraudulent conduct can justly be imputed to a pledgee when it appears that whatever was done in executing the power of sale was done in full compliance with the terms of the pledge, and when there is no evidence that any unconscionable advantage was taken of the pledgor or his creditors. Doubtless the pledgee cannot avail himself of his authority, however unlimited, to sacrifice the property wantonly, or to purchase it himself at a valuation so inadequate as to suggest a fraudulent purpose. If the valuation in this case was unfair, the burden was on the trustee [of pledgor] to prove the fact."

A close search of the record fails to show any evidence whatever tending to impeach the sales of cotton, aside from that contained in the "Daily News Record," and that goes to the 1923 sales only. There

was timely and proper objection made to this evidence, and we are satisfied the objection should have been sustained. We have stated in the Moore case, *supra,* what the published item in the "Daily News Record" was that defendant wished to get before the court and jury. For the lack of a better description, counsel have called it a summary of the weekly range of prices of twelve varieties of cotton during 1923, including Arizona Pima. We wish to add to what we said in the Moore case upon the question only a suggestion or two. We think in order to qualify a newspaper as evidence it should be published for the enlightenment of persons dealing in the articles to prove whose value it is offered, and that persons generally were in the habit of dealing in such commodity in reliance upon its market quotations. In order that a newspaper be of any use to the trade, its quotation of prices must be published daily and contemporaneously with the market. We know as a fact that only such publications are consulted and relied upon in business deals. It is nonsense to say that a statement of the prices that prevailed two or six months before its publication advised the public trade of anything, or that anybody made any deals in reliance upon it. Commercial transactions are generally based on the market quotations of the preceding day as published in newspapers and trade journals (*Nash* v. *Classen,* 163 Ill. 409, 45 N. E. 276), and never, so far as we know, upon reports contained in the ancient files of newspapers. Such a summary would not have, as Professor Wigmore puts it, "the practical equivalent of a personal observation . . . " such as "a report based on direct consultation with dealers or with the officers of an exchange or a market . . . " (3 Wigmore on Evidence, 2d ed., § 1704), nor would the compiler, nor indeed the newspaper, have the same incentive for accuracy as if

their figures were to be the basis of business deals in the articles quoted.

But if it be assumed that the summary offered was compiled from the data published in 1923, the only testimony as to what that data represented is to the effect that it was the asking price for Pima cotton. Market value is determined by actual sales, and not by the asked prices. *Peters* v. *McPhadden,* 75 Wash. 525, Ann. Cas. 1915C, 63, 135 Pac. 26; *Houston Packing Co.* v. *Griffith* (Tex. Civ. App.), 164 S. W. 431; *Fountain* v. *Wabash R. Co.,* 114 Mo. App. 676, 90 S. W. 393; *Fairley* v. *Smith,* 87 N. C. 367, 42 Am. Rep. 522; Wigmore, *supra;* 22 C. J. 188, § 152; 10 R. C. L. 1167, § 367.

Clearly the plaintiff was entitled to an instructed verdict, unless the court erred in some of the respects asserted by defendants' cross-assignments.

In order to avoid encumbering our opinion with a lot of nonessential details in no way going to the merits, we have heretofore omitted to state that this suit was originally brought by the People's National Bank of Roxbury, payee of notes and pledgee of cotton; that thereafter the present plaintiff, upon application and without resistance from defendants, was permitted to intervene upon the ground that it was the owner by assignment of said paper and the pledgee of property and was such at the time the People's National Bank brought suit. This appearing, defendants made a motion for judgment against the People's National Bank. Error is assigned upon the court's refusal to grant such motion. The record fails to show that the court ever passed upon the motion either refusing or granting the same, and for that reason there is no basis for such assignment. During the trial and at the close of defendants' case the People's National Bank was nonsuited upon its own motion and without any objection from defend-

ants. From that time its connection with this lawsuit was severed, and, that particular order not being before us, we cannot review it for error.

It is next claimed the court erred in withdrawing from the jury's consideration the issue of fraud, alleged in defendants' pleadings to have been committed by plaintiff's agents at the inception of notes and pledge contract. The facts as to how the People's National Bank became identified with the consignment of defendants' cotton are as follows: Calder & Richmond, cotton brokers of Providence, Rhode Island, were locally represented by one M. P. Smith, who solicited the consignment of defendants' cotton for the eastern market. Smith made it known to defendants that such bank would advance 35 cents per pound and the freight from Phoenix to Providence on their Pima cotton, on condition that defendants would give to the bank their interest-bearing notes covering such advances, and also deliver to the bank warehouse receipts for cotton. The notes, collateral in form, specified the particular warehouse receipts pledged to secure notes. The advances were paid defendants by the People's National Bank by drafts sent through defendants' local bank, and notes and warehouse receipts were forwarded to the bank. The cotton was shipped to Providence, and kept in a bonded warehouse until sold.

The representations claimed to be false and fraudulent consisted of certain statements made to defendants by Smith at the time of the first consignment and coincident with signing of notes to cover the 35-cent advance. These statements were, in effect: That by consigning to Providence defendants would get better prices, 70 cents to 75 cents; that by wiring the grade of cotton a sale could be made before it reached Providence; that the brokerage commissions of two cents per pound would be made up by gain in

weight on account of change from a dry climate; that Calder & Richmond and the People's National Bank were the same thing, the bank being the financial end and Calder & Richmond the selling end of it, and that no deduction would be made for tare.

The learned trial court was of the opinion that such evidence was not legally sufficient to support the charge of fraud, and in his conclusion we concur. Even had the notes and agreement of pledge been personally with Calder & Richmond, who solicited the consignment, most of the statements of their agent were plainly and palpably nothing more than the agent's conjecture or guess, the probabilities of which defendants were as capable of estimating as anyone else. Such statements were not representations of facts, but were mere trade talk, common to most commercial transactions, and so regarded by persons to whom they are addressed. That they were so regarded by defendants is manifest. Mr. Korrick, one of the defendants, a man of wide business experience, testifying as a witness for defendants, said personally he did not have much faith that by consigning the cotton they would "get a much better price than what the local market was at the time," showing that he was depending upon the market and not upon any promise of the soliciting agent. But the advances on cotton were not made by Calder & Richmond, nor were the collateral notes made out in their favor. The defendants knew who was making the advances, and they also knew that their obligations to repay run to the People's National Bank. Presumably they read the notes before signing, and understood their terms and conditions, and were satisfied with the written contract they were making with the bank. If Calder & Richmond were the agents of the bank, by every legitimate implication the agency was limited to the securing from defendants the collateral notes

and the warehouse receipts as security to the loan
made. In other words, when Calder & Richmond
presented to defendants collateral notes, they pre-
sented the extent of their authority in written form,
and, if the scope of their agency was broader than
the writing, there should be some evidence thereof
besides the statements of the agent. Such statements
are incompetent to prove agency. *Navajo-Apache
Bank & Tr. Co.* v. *Willis,* 21 Ariz. 610, 193 Pac. 297;
*Brutinel* v. *Nygren,* 17 Ariz. 491, L. R. A. 1918F, 713,
154 Pac. 1042.

In the last case it was said that " 'agency' has its
conception in something lawful that a person may
do, and a delegation by such person to another of the
power lawfully to do that thing." Clearly the
People's National Bank would have exceeded its char-
ter powers by going into partnership with Calder
& Richmond in the brokerage business (7 C. J. 808,
§ 727; *Merchants' Nat. Bank* v. *Wehrmann,* 202 U. S.
295, 50 L. Ed. 1036, 26 Sup. Ct. Rep. 613), and no
court would be justified in assuming, in the absence
of positive evidence to the contrary, that it had done
so. As a national bank it had the right to make the
loan, taking the cotton as collateral security in the
manner it did, and there is no evidence to show that
it was interested further than to make the loan ac-
cording to the terms of the form notes.

The giving of the following instruction is assigned
as error:

"I charge you, however, that in this case under the
terms of the pledge the pledgee was not bound to sell
the cotton at any particular time. . . .

"In determining whether or not the plaintiff has
exercised reasonable care, I charge you, however,
that the collateral notes received in evidence in this
case confer upon the holder of the note the power to
sell the cotton pledged to secure the same when the
notes became due or at any time thereafter. Under

this power the holder of the notes had the right to sell the cotton at any time, and cannot be held liable because the price of cotton on the day the collateral was sold happened to be less than at prior times when the cotton might have been sold, or at subsequent times to which the cotton might have been retained,"

—because it "completely ignores the oral contract of sale or consignment." In the consideration of the assignment preceding this one, the contention made here is, we think, fully disposed of. This instruction is in strict conformity with the written contract, and we hold that it is the only contract between the parties as established by competent evidence. Under that contract the pledgee of cotton had the right to sell it at any time. *The Atlantic National Bank* v. *Moore, supra.*

Finally it is claimed the court submitted to the jury the incorrect measure of damages for conversion. Since defendants failed to sustain their contention of fraud and conversion, it is immaterial whether the instruction complained of correctly stated the law or not, and for that reason it is not necessary to pass on the point raised.

Plaintiff's motion for an instructed verdict, made at the close of defendants' case, should have been granted. Accordingly, the judgment is reversed and the cause remanded, with directions that judgment be entered for plaintiff, as asked for in the motion.

McALISTER, C. J., and LOCKWOOD, J., concur.