[Civil No. 4064.   Filed April 17, 1939.]

[89 Pac. (2d) 493.]

THE VALLEY NATIONAL BANK, a Corporation, Appellant, v. C. A. STEWART, Appellee.

Messrs. Gust, Rosenfeld, Divelbess, Robinette & Coolidge, for Appellant.

Mr. A. David Latham, for Appellee.

LOCKWOOD, J.—C. A. Stewart, hereinafter called plaintiff, brought suit against the Valley National Bank, a corporation, hereinafter called defendant, to recover the alleged value of certain broom corn pledged as collateral to secure a promissory note executed by him in favor of defendant, claiming that defendant sold the collateral contrary to law. The case was tried before the court sitting without a jury, and judgment rendered in favor of plaintiff for the sum of $505.35, whereupon this appeal was taken.

The facts material to a determination of the case may be stated as follows: In the year 1933 or 1934, plaintiff made a loan from defendant, secured by a pledge of certain collateral, and at the same time executed and gave to defendant a continuing pledge agreement, which we will refer to and quote from hereinafter. Subsequently the loan was paid, and the collateral released, but the pledge agreement remained in the possession of the defendant. With this general pledge agreement still in its possession, defendant on September 3, 1936, made a ninety day loan of $1,750 to plaintiff, taking as security therefor warehouse re-

ceipts for some fifty thousand pounds of broom corn, but no new pledge agreement was taken at that time. The loan was not paid on December 2, 1936, its due date, and on December 15th it was renewed until January 2, 1937. It was not paid at that time, and defendant wrote plaintiff several times that the note was again past due, and demanding his immediate attention. Plaintiff, however, testified that he never received any of these letters. On February 8, 1937, the bank's attorney wrote plaintiff, again demanding payment, giving him five days within which to make it, and advising that unless the payment was made the collateral would be sold. To this letter plaintiff responded, stating he would be in Phoenix in a few days and would then clear up the note. He did not, however, pay the note nor communicate further with defendant, and on March 20th the latter made preparations to sell the collateral at public sale, under section 2337, Revised Code of 1928. A notice of the sale was prepared, posted and published, in accordance with the statute, and a copy thereof was enclosed in a letter addressed to plaintiff at his residence address in Phoenix, where he had previously been in the habit of receiving his mail. This letter, however, according to plaintiff's testimony was never received by him. Thereafter, and on April 6, 1937, a sale was held in the manner required by the statute, and the property was bid in by defendant for the amount of the debt and charges. After this sale, a question arose as to whether section 2337, *supra,* required personal service on defendant of the notice of sale, or whether it was sufficient to mail such copy to him. In order to eliminate that question, a second sale was held on April 27, 1937, in accordance with the terms authorized under the pledge agreement above referred to. At this sale one Hodgson purchased the collateral for an amount which was $9.01 in excess of the debt and the charges

then due. This $9.01 was tendered to plaintiff before and at the time of trial, but was refused by him.

There was considerable evidence offered as to the value of the collateral at the time of sale, there being a sharp dispute over whether it was worth more than the price for which it was sold, or not. On this evidence the court found for the plaintiff as aforesaid, and this appeal was taken.

There are seven assignments of error, but we think it necessary to consider only the first two, which read as follows:

"The court erred in finding for appellee in any amount because the public sale of the collateral held on April 6, 1937, was made in accordance with the terms of the statute and appellee is entitled only to the proceeds of the sale, which he has received by proper credits."

"The court erred in finding for appellee in any amount in excess of $9.01 for the reason the private sale of the collateral on April 27, 1937, was authorized by the terms of the pledge agreement and appellee is entitled only to the surplus proceeds of that sale of $9.01, which was tendered to him before and at the time of trial and refused."

We consider them in their order. First was the public sale of April 6th a valid one? If it were, of course plaintiff could not recover. Section 2337, *supra,* under which the sale was held, reads as follows:

"*Pledges; sale of property; foreclosure.* Chattels pledged as security for an indebtedness, unless in writing the contrary has been agreed upon, may be sold for the nonpayment of the indebtedness by giving the pledgor, his purchaser or assignee, of whose purchase or assignment the pledgee has knowledge, fifteen days' written notice and posting the notice for the same time in three public places in the county, and publishing the notice at least once in a newspaper published in such county not less than ten days before the date of sale. The notice shall contain a description of the

property to be sold, and the time and place of the sale. If redemption is not made before the sale, the pledgee may sell at public auction, to the highest bidder, the pledged property, or so much thereof as necessary to pay the debt, interest and costs of sale, and he may be a bidder at such sale. Any surplus arising from the sale and any property remaining unsold shall be paid or returned to the pledgor. The pledgee may, if he elects, commence an action for the foreclosure of such pledges. The facts of the sale may be evidenced as provided by this chapter."

It is admitted that the statute was strictly followed, except that the written notice to the pledgor required thereby was mailed to him at his last known address instead of being delivered to him personally. Does the statute require personal notice or not? We have considered the cases and are of the opinion that the better rule is that whenever a statute requires the giving of notice of any act, and does not specify the manner in which the notice is to be given, personal notice is required. *Weyerhaeuser Timber Co.* v. *Pierce County*, 133 Wash. 355, 233 Pac. 922; *Long* v. *Chronicle Pub. Co.*, 68 Cal. App. 171, 228 Pac. 873; 46 C. J. 559. Such being the case, the statute was not complied with and the sale of April 6th was void.

There remains the question of whether the private sale made April 27th was a valid one. If the public sale was void, it was a nullity and in no manner prevents the making of a private sale, if as a matter of fact the latter was authorized by law, for a void act has no effect.

We consider then the validity of the private sale of April 27th. This was made under the written collateral pledge agreement above referred to. It is, of course, the law that the parties to a pledge may, if they so desire, agree that a sale thereof may be made in any manner not forbidden by statute, and that such agreement is valid. *Atlantic Nat. Bank* v. *Korrick*, .

29 Ariz. 468, 242 Pac. 1009, 43 A. L. R. 1184; *First Nat. Bank of Tustin* v. *Landreth,* 128 Cal. App. 138, 16 Pac. (2d) 1010. Was there a valid private agreement authorizing such a sale? It is not disputed that at some time in 1933 or 1934 the plaintiff borrowed from defendant a considerable sum of money, and pledged collateral as security therefor, and that he executed a certain written instrument at that time. This instrument, so far as material to this case, reads as follows:

"General Pledge Agreement.

"Know All Men by These Presents: That in consideration of any financial accommodations given, or to be given, or continued, to the undersigned by the —— (hereinafter called 'said Bank') and as collateral security for the payment of any indebtedness, obligation or liability of the undersigned to said Bank or its assigns, now or hereafter existing, matured, or to mature, absolute or contingent, and wherever payable, . . . the undersigned hereby assign, transfer to and deposit with the said Bank all personal property this day delivered by the undersigned to said Bank, or which may now be held by said Bank, or which may hereafter be delivered by the undersigned to said Bank during the existence of this agreement, . . .

"The power of sale and all other powers hereinafter granted by the undersigned shall apply to all collaterals of any kind or description, . . . at any time during the existence of this agreement deposited with or in the possession or control of said Bank, or its assigns, or any of its agents or correspondents.

. . . . . . . . . . . .

"If, with the consent of said Bank, or its assigns, the undersigned shall substitute or exchange other securities in place of the collaterals herein mentioned, then all of the rights and privileges of said Bank, or its assigns, and all obligations on the part of the undersigned shall be forthwith applicable to said substituted or exchanged securities, the same in all respects as with respect to the property originally pledged or held as collateral hereunder.

"In the event . . . of the non-payment of principal or interest, when due, on all or any of the liabilities of the undersigned secured and intended to be secured hereby, in accordance with the terms of the instrument evidencing the same, the undersigned hereby constitute and appoint said Bank, its successors or assigns, attorney in fact, irrevocable, of the undersigned with full power of substitution and revocation, and hereby authorize, empower and instruct said attorney in fact, or its assigns, to sell, without any previous demand, or demand of performance, upon the undersigned, and with or without notice to the undersigned, at its option, the whole or any part of said securities, either at public or private sale, or at broker's board, at its discretion and without any advertisement or notice of sale, and to deliver the same to the purchaser thereof; said Bank, or its assigns, being at liberty to become the purchaser, if sale is public or private or at broker's board, and to hold any and all property so purchased, discharged of any right of redemption whatever.

. . . . . . . . . . . .

"It is further agreed that these presents constitute a continuing agreement applying to any and all future, as well as existing transactions between the undersigned and said Bank, and that the powers of sale and all other powers, rights and privileges hereinabove given are to apply to and bind the heirs, executors, administrators, successors and assigns of the respective parties hereto.

. . . . . . . . . . . .

"This instrument is executed by the undersigned in duplicate original, both of which instruments shall remain valid and subsisting so long as the undersigned shall in any manner be or remain indebted to said Bank or its assigns, and until the surrender to the undersigned of this instrument and the duplicate original hereof. The word 'undersigned' wherever used herein shall include the plural as well as the singular.

"In witness whereof, the undersigned ha— hereunto set —— hand and seal— this —— day of ——, A. D. 193—.

"C. A. STEWART (Seal)"

■■  The construction of the legal effect of this instrument is, of course, for the court. We are satisfied, after a careful examination and consideration of all of its terms, that it was intended by the parties to constitute, and that it did constitute, a continuing pledge agreement covering any collateral that might at any time be deposited with defendant as security for any loan or advance made by defendant to plaintiff until a return of the pledge agreement by defendant to plaintiff, and that it did not expire on a settlement of the original loan made at the time it was given. Pledge agreements of this kind are a very common thing with banks, and it is usual, particularly when it is anticipated that the pledgor may have other transactions with the bank, to leave the original pledge agreement in the files in order to avoid the necessity of executing another one containing the identical terms. It is not disputed by plaintiff that he executed this agreement; it is not disputed that at the time he made the loan involved in the present case the agreement was still in the possession of the defendant, and had never been returned to plaintiff, nor had he requested its return.

We think under these circumstances the defendant was authorized to follow the terms of the agreement in disposing of the collateral deposited as security for the loan which was admittedly overdue and unpaid on April 27, 1937.

There is no contention that the conditions set up by the pledge agreement for the making of the sale were not complied with in all particulars, nor that the amount received at such sale in excess of that necessary to satisfy the debt due the defendant, together with all legal charges, was not tendered to plaintiff before the beginning of this suit. Such being the case, the trial court erred in rendering judgment for plaintiff, and in not rendering judgment for defendant.

The judgment is reversed, and the case remanded with instructions to render judgment for defendant. Since the tender of the amount due plaintiff was made before he filed his action, defendant will recover its costs in both courts.

ROSS, C. J., and McALISTER, J., concur.