[Civil No. 4121.   Filed April 15, 1940.]

[101 Pac. (2d) 202.]

JACK WAITE MINING COMPANY, a Corporation, Appellant, v. CHARLES C. WEST, Appellee.

Messrs. Baker & Whitney and Mr. Lawrence L. Howe, for Appellant.

Messrs. Townsend, Jenckes & Wildman, for Appellee.

LOCKWOOD, J.—This is an appeal by Jack Waite Mining Company, a corporation, hereinafter called defendant, from a judgment in favor of Charles C. West, hereinafter called plaintiff, directing defendant to reinstate certain shares of its capital stock upon the stock record books in the name of plaintiff, or in lieu thereof, to pay him the sum of $1,200. The facts material to a decision of the case may be stated as ·follows:

Defendant, prior to 1932, was a mining corporation in which plaintiff was the owner of 4,000 shares of fully paid capital stock. Under the articles of incorporation this stock was expressly declared to be assessable, but the articles provided no specific manner by which the assessment could be levied and collected. On March 21, 1932, the board of directors of defendant, hereinafter called the board, amended its by-laws by setting up a method for levying and collecting an assessment. It provided that the board might order an assessment payable on a certain date, notify the stockholders, and if the assessment remained unpaid, the stock of the delinquent stockholder would be sold at public auction in the manner set forth in the by-laws. On the same date the board levied an assessment of 4¢ per share on all of its outstanding capital stock, providing that it should be paid on or before May 6, 1932, and that any stock upon which the assessment remained unpaid at that date would be delinquent and sold at public auction on June 6, 1932. Notice of the assessment was duly mailed to plaintiff and received by him, and on May 2d he drew a check upon an account which he maintained with a certain private institution in New York. The check which plaintiff forwarded in payment of the assess-

ment, according to defendant, was never received. Certainly it was never cashed, and the assessment was never, therefore, paid. Plaintiff left for Europe in July and returned in September, when he found that the institution where his account was kept was dissolved. He was given a statement of his balance and accepted it as correct without any investigation, assuming that the check for the assessment had been paid. He never compared the stubs of the checks which he kept with the charges against his account, though statements of it had been rendered to him from time to time while he was in Europe. In the meantime the date for the payment of the assessment had been postponed repeatedly, and the sale of the stock similarly postponed until November 1, 1932, when it was finally sold in the manner provided for by the by-laws. On August 27, 1934, plaintiff sold his certificate representing the 4,000 shares in controversy to a third party, and in March of 1937 this purchaser notified plaintiff that the stock had been sold for non-payment of the assessment. This was the first actual knowledge plaintiff had that the stock had been sold. A demand for reinstatement was made and refused, and on January 4, 1938, this action was commenced.

There were two causes of action set up, each of which was based upon an alleged conversion of the stock by the sale in November, 1932. Defendant, in its answer, raised two defenses, (a) that the assessment and sale of the stock as aforesaid was authorized by law and valid in all respects, and (b) that the action was barred by subdivisions 3 and 4 of section 2059, and subdivision 3 of section 2060, Revised Code of 1928, being the statutes of limitation. The case came on for trial, and defendant objected to any evidence being presented on the ground that it appeared upon the face of the complaint that the action was barred by the statutes of limitation. This objection was over-

ruled and evidence was offered by both parties. At the close of the evidence defendant moved that plaintiff be required to elect between the two causes of action set up in his complaint, and for judgment on the ground that the evidence showed that both causes of action were barred by subdivision 3 of section 2059, *supra.* The motion for judgment was denied and an election was required, and plaintiff chose to stand on his second cause of action, whereupon judgment was rendered as above set forth.

The assignments of error raise two legal questions, (a) was the sale of plaintiff's stock made according to law, and (b) if it was not, is the action barred by the statutes of limitation? It is agreed by the parties that this is a simple action for conversion, involving no element of fraud other than might be said to be implied by such conversion. This being true, the statute of limitations governing the case is subdivision 3 of section 2059, *supra,* which reads as follows:

"Two year limitation. There shall be commenced and prosecuted within two years after the cause of action shall have accrued, and not afterward, the following · actions, for: . . . 3. detaining the personal property of another and for converting such personal property to one's own use; . . . "

It is of course apparent from the record, and not disputed by plaintiff, that this action was not commenced until nearly six years after the date of the alleged conversion, so that if this were the ordinary conversion the statute of limitations had run for many years. Plaintiff, however, claims that the statute did not begin to run until March, 1937, for the reason that defendant, in its relation to plaintiff and his stock was the trustee of an express trust, and that in such cases the statute does not begin to run in cases of conversion until the *cestui que trust* has notice that the trustee has repudiated his trust. Defendant admits

the general rule as thus stated, but insists (a) that there was no express trust existing between it and plaintiff in regard to the stock, but at the most an implied trust, and that the rule relied upon by plaintiff does not apply to cases of implied trust but to express trusts only, and (b) that even if it be held the relationship between plaintiff and defendant was one of an express trust, yet the record shows the situation was such that on November 1, 1932, plaintiff knew, *or in the exercise of reasonable care should have known,* that defendant had repudiated any trust existing between it and plaintiff.

We consider this last contention of defendant first, for if it be correct and applicable to the facts, there is no need for us to go further. We think it is the law that where the trustee of an express trust, to the knowledge of his *cestui que trust,* repudiates the trust and converts the property, the statute then begins to run. Nor do we understand that plaintiff questions this. We also think the better reasoning is that even though plaintiff may not have notice of the specific repudiation of the trust, yet if he knows facts from which a reasonable man would be put on notice that the trust has been, or is about to be, repudiated, this is equivalent to actual notice of the repudiation. A *cestui que trust* should not be permitted to shut his eyes and refuse to recognize a plain warning of danger, and then claim that he had no knowledge of the catastrophe, when it comes. *Weniger* v. *Success Min. Co.,* (8 Cir.) 227 Fed. 548.

But do the facts of the case show the rule as stated by us to be applicable? Plaintiff admits that he had notice of the assessment and that his stock would be sold for non-payment thereof if it were not paid by May 6th. He says, and we must assume it to be true, that about May 2d he mailed to defendant a check on a private firm, of which he was a member,

covering the amount of the assessment, and then due to his illness went to Europe. He knew at the time he left that his balance with this private firm was at most a little over $1,000; he was in the habit of keeping records in his check books of the checks which he drew on this account; he was a competent business man of many years' experience. Upon his return to this country he was notified that his account had been closed with a balance due him of a certain amount. We think ordinary business usages and common sense would require that he compare this balance with the statements he had received and the stubs of his check book to determine if it were correct, and if it appeared incorrect to examine the books of the private firm, which were at all times accessible to him. He claims that he did not do this but accepted the balance given him as correct without an investigation to see how it had been reached.

It is very generally held in cases where the question is whether a bank or a depositor should bear the loss occasioned by the payment of forged checks, that a certain duty is imposed upon the depositor. In the case of *Stumpp* v. *Bank of New York,* 212 App. Div. 608, 209 N. Y. Supp. 396, 402, the court said:

"Under the authorities, I believe that the depositor, upon the return of his vouchers from the bank, accompanied by a statement of the transactions in his account for the preceding month, is bound to do three things: (1) Compare the vouchers returned by the bank with the check stubs in his stub book. (2) Compare the balance entered in the statement (or passbook) with the balance in his stub book. (3) Compare the returned vouchers with the list of checks entered in the statement (or check list). If such examination is made with ordinary care and no error is detected, then the depositor is not negligent; if he fails to make any or all of these comparisons, and such comparison would have disclosed the forgery, then he is negligent and cannot recover from the bank."

This rule has been generally followed by the cases dealing with such questions. We think the same rule should obtain in this case. If plaintiff had used the care indicated as necessary in the Stumpp case, when his account was closed he would have discovered that the check which he had forwarded had never been cashed, and in view of the fact that he had been notified that if the assessment was not paid the stock would be sold, we think as a matter of law he had notice of the repudiation of any trust. Such being the case, even under the rule contended for by plaintiff, the statute of limitations had run long before the commencement of the present action.

The judgment is reversed and the case remanded with instructions to enter judgment for defendant.

ROSS, C. J., and McALISTER, J., concur.