657 F.2d 1094
 Ann VAN CLEEF and William H. Brophy, Personal
Representatives of the Estate of Hubert O.
Merryweather, Plaintiffs-Appellants,
v.
The AEROFLEX CORPORATION, a New York Corporation, Defendant-Appellee.
 No. 79-3320.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 16, 1981.
Decided Oct. 1, 1981.
 
 William Lee McLane, Phoenix, Ariz., argued, for plaintiffs-appellants; Nola McLane, McLane & McLane, Phoenix, Ariz., on brief.
 Terry Fenzl, Phoenix, Ariz., for defendant-appellee.
 Appeal from the United States District Court for the District of Arizona.
 Before TUTTLE,* DUNIWAY and ANDERSON, Circuit Judges.
 TUTTLE, Circuit Judge:
 
 
 1
 Van Cleef and Brophy, personal representatives of the estate of Hubert Merryweather and nominal plaintiffs[1] in the diversity action for breach of contract, appeal from a jury verdict for defendant Aeroflex.
 
 I. FACTS
 
 2
 In 1962, Hubert Merryweather was the owner of 50% (5997 shares) of the outstanding shares of Baca Float Ranch, Inc., an Arizona corporation.[2] On September 19, 1962, Hubert borrowed $450,000 from Arno Dalby, pledging his stock interest in Baca Float Ranch as security for the loan.[3] Hubert's siblings, George Merryweather and Laura Burgess, guaranteed Dalby's loan to Hubert.[4] In 1963, Hubert borrowed $175,000 from Pioneer Bank, again pledging as collateral his shares of Baca stock.
 
 
 3
 In 1964, Hubert's loan from Pioneer Bank became due. In need of funds to repay the debt, he approached the treasurer of the Aeroflex Corporation, a New York corporation, who was able to arrange for Hubert to borrow the sum of $215,000 from Franklin National Bank, by guaranteeing payment of the loan and depositing a $215,000 certificate of deposit with the bank as security for the loan. The loan was made November 11, 1964, for a period of four months with the possibility of renewal for an additional four months.
 
 
 4
 On November 13, 1964, Hubert and Aeroflex signed an agreement which set out the terms of this arrangement. The agreement provided, inter alia, that Hubert was to pay Aeroflex $24,000 and a 10% interest in his stockholdings in Baca Float Ranch, that he would use the proceeds of the loan to pay off his debt to Pioneer Bank and that he would furnish Aeroflex with a pledge of his 50% stock interest in Baca Float which would be junior to the Dalby pledge. Aeroflex's agreement to renew the loan for an additional four months was conditioned on Aeroflex's being satisfied that Hubert was exercising diligence in his efforts to pay his outstanding debts.
 
 
 5
 Aeroflex became concerned that Hubert was not making sufficient efforts to sell either his stock or the ranch so that repayment of the two loans could be made. Consequently, on March 13, 1965, a meeting was held by the parties and their attorneys. There Hubert signed and delivered the pledge he had previously promised to provide, and the parties executed the agreement which is the basis of Hubert's breach of contract action. This agreement provided that in the event Hubert did not repay the Franklin National Bank debt by June 1, 1965, Aeroflex would have the right to sell Hubert's stock interest if a buyer willing to pay the $2 million price he sought could be found.[5]
 
 
 6
 Hubert failed to repay the loan on June 1, 1965, and on June 4, 1965, took steps to liquidate the corporation.[6] On July 20, 1965, Aeroflex wrote to Hubert, notifying him that they considered his attempt to liquidate the corporation without their prior knowledge and consent to be a breach of the March 13 agreement and directing him not to proceed further with such plans without their prior consent.[7]
 
 
 7
 Hubert ultimately defaulted on his obligations. George and Laura, pursuant to their guaranty, paid Dalby and received an assignment of the Dalby pledge; Aeroflex, pursuant to its guaranty, paid the Franklin National Bank. Arizona Land, employed as collection agent, was directed to foreclose the Aeroflex pledge in accordance with the pledge and escrow instructions which had previously been signed by Hubert.
 
 
 8
 On September 22, 1965, Aeroflex notified Hubert that he was in default and that they intended to foreclose Hubert's stock interest. On October 1, Aeroflex issued a notice of sale. Appellants claim that no copy or original of the notice of sale was served personally on Hubert.[8]
 
 
 9
 On November 9, a public sale was held and the only bid submitted, a credit bid of $785,000, submitted jointly by George, Laura and Aeroflex, was accepted. A bill of sale and Hubert's stock certificate representing his 50% stock interest in Baca Float Ranch were delivered to Aeroflex that day. Hubert contends that the stock was worth approximately $2,000,000 at that time, and that the defendants in fact realized approximately $2,000,000 when they liquidated Baca Float six months later.[9]
 
 
 10
 On June 27, 1968, Hubert's lawyer made a demand on Aeroflex for money he claimed was due Hubert from Aeroflex under the terms of the March 13 contract. Aeroflex rejected this demand on July 23, 1968. Hubert filed his complaint July 10, 1969, three years and eight months after the foreclosure sale.
 
 
 11
 Hubert asserted several causes of action against Aeroflex. Among these were a claim for usury, and a claim that Aeroflex had liquidated the corporation pursuant to the March 13, 1965, agreement and had breached that agreement by failing to give him the money after the debts were paid. Pursuant to this allegation, he claimed damages of $448,566.03.[10]
 
 
 12
 Hubert's claim based on usury was dismissed. His breach of contract claim went to the jury which found for defendant Aeroflex.
 
 II. STATUTES OF LIMITATIONS
 
 13
 (a) Period applicable to usury claim
 
 
 14
 Regardless of the validity of Hubert's usury claim, he was not entitled to raise this claim after the applicable statute of limitations period had run. The district court correctly recognized this fact and looked to the law of Arizona, the place where the action was pending, for the applicable statute of limitations. See Van Dyke v. Parker, 83 F.2d 35 (9th Cir. 1936); Ross v. Ross, 96 Ariz. 249, 393 P.2d 933 (1964). See also 2 Moore's Federal Practice P 3.07(2), at 3-50.
 
 
 15
 Arizona has prescribed limitations periods of one to six years, depending upon the kind of action filed. A.R.S. §§ 12-541-550. For example, the limitation period for actions for conversion of personal property is two years, A.R.S. § 12-542(5); for actions "for debt where the indebtedness is not evidenced by a contract in writing," three years, § 12-543(1); for relief on the ground of fraud or mistake; three years, § 12-543(3); for actions "upon a contract in writing executed within the state," six years. Section 12-550 provides for the residual "general limitations":
 
 
 16
 Actions other than for recovery of real property for which no limitations is otherwise prescribed shall be brought within four years after the cause of action accrues, and not afterward.
 
 
 17
 None of the Arizona statute of limitations sections, however, specifically covers claims for recovery of usurious interest. Appellants, therefore, argue that the residual category of A.R.S. § 12-550 should apply to the claim for recovery of the allegedly usurious interest. To buttress this choice of the four-year period, they point to cases where the Arizona courts have held that whenever there is a choice between the application of two statutes of limitations with varying periods, the longer should apply. See, e. g., Southern Pacific Railroad Co. v. Gonzalez, 48 Ariz. 260, 61 P.2d 377 (1936); Anderson v. Thude, 42 Ariz. 271, 25 P.2d 272 (1933).
 
 
 18
 Appellants appear to be correct in their assertion that Arizona courts would favor the application of the longer limitations period when given a choice between two potentially applicable periods. This principle, however, has no application to the case at hand. In regard to Hubert's usury claim, the three year period prescribed in A.R.S. § 12-543(1) is the only applicable period.
 
 
 19
 In Arizona, when a statute is adopted from another state, it is presumed that the statute is taken with the construction placed upon it by the courts of that state prior to its adoption. England v. Ally Ong Hing, 105 Ariz. 65, 459 P.2d 498 (1969); State ex rel. Swift v. Tullar, 11 Ariz.App. 112, 462 P.2d 409 (1969). Arizona's statutes of limitations were adopted from Texas. Western Coal & Mining Co. v. Hilvert, 63 Ariz. 171, 160 P.2d 331 (1945). Therefore, where a particular kind of cause of action is not covered expressly by the statute and the question of what limitation period should be applied has not been settled by the Arizona Supreme Court, Arizona courts will look to Texas law for guidance before resorting to an application of the residual section, A.R.S. § 12-550. Schuldes v. National Surety Corporation, 27 Ariz.App. 611, 557 P.2d 543 (1976).
 
 
 20
 Texas courts have specifically held causes of action for recovery of usurious interest payments to be governed by the statute of limitations covering actions for money had and received. Ware v. Wright, 266 S.W.2d 188 (Tex.Civ.App.1954); Clanton v. Community Finance & Thrift Corp., 262 S.W.2d 252 (Tex.Civ.App.1954). See also Schmid v. City National Bank, 132 Tex. 115, 114 S.W.2d 854, aff'g 94 S.W.2d 554 (1938). We find this construction persuasive, particularly in light of the absence of Arizona cases on point. See, Phoenix-Sunflower Industries, Inc. v. Hughes, 105 Ariz. 334, 464 P.2d 617, 619 (1970); Schuldes v. National Surety Corp., supra. Therefore, we hold that the appropriate statutory period is contained in A.R.S. § 12-543(1) which provides that a cause of action for money had and received must be brought within three years from the time the cause of action accrued. See Young Mines Co. v. Citizens State Bank, 296 P. 247 (Ariz.1931).
 
 
 21
 (b) Time of accrual
 
 
 22
 We proceed, therefore, to the question of whether Hubert's cause of action accrued within three years of July 10, 1969, the day on which he filed suit. Appellees argue that the cause of action for recovery of usurious interest accrued at the time of the foreclosure sale. We agree.
 
 
 23
 Arizona courts have been persuaded by the Texas court's construction of the date of accrual. In the Clanton case, supra, the Texas court held that the cause of action for usurious interest was barred because the notes were fully paid outside the limitation period. Since Hubert defaulted on the notes involved in this case, the notes were never fully paid in the manner that the notes in Clanton were paid; however, we find the date of the foreclosure sale to be the date most closely analogous to the date of full payment because the foreclosure sale was the last moment that any property of the debtor was transferred to the creditor in a transaction that might be considered usurious. See also Cheatham v. Sahuaro Collection Service, Inc., 118 Ariz. 452, 577 P.2d 738 (Ariz.App.1978); Baca v. Bank of America, National Trust & Savings Ass'n, 99 Ariz. 352, 409 P.2d 52 (1965).
 
 
 24
 Since the three year period had run when Hubert brought suit on July 10, 1969, we affirm the district court's dismissal of Hubert's usury claim on the grounds that this cause of action was barred by the statute of limitations.
 
 III. JURY INSTRUCTIONS
 
 25
 The only issues remaining on appeal relate to appellants' contention that the trial court erred by refusing to give certain requested jury instructions. Specifically, appellants contend that the trial court erred by refusing to instruct the jury on the validity of the foreclosure sale and on the law relevant to a power coupled with an interest.
 
 
 26
 A failure to give a requested jury instruction is not reversible error so long as the trial judge gives adequate instructions on each element of the case. Brown v. Link Belt Corp., 565 F.2d 1107 (9th Cir. 1977); United States v. Garcia-Rodriguez, 558 F.2d 956 (9th Cir. 1977). A trial judge need not incorporate every proposition of law suggested by counsel so long as he adequately covers the principles necessary for jury guidance. See Gradsky v. Sperry Rand Corp., 489 F.2d 502, 504 (6th Cir. 1973); Puggioni v. Luckenbach S.S. Co., Inc., 286 F.2d 340, 344 (2d Cir. 1961). In fact, this Court has held a trial court would be in error if it instructed the jury on an issue not properly part of the case. Brown v. Chapman, 304 F.2d 149, 154 (9th Cir. 1962).
 
 
 27
 An appellate court must review the instructions which were given as a whole to determine whether the charge given was satisfactory. Sweet Milk Co. v. Stanfield, 353 F.2d 811 (9th Cir. 1965). " 'The test is not whether the charge was faultless in every particular but whether the jury was misled in any way and whether it had (an) understanding of the issues and its duty to determine those issues.' " Houston v. Herring, 562 F.2d 347, 349 (5th Cir. 1977) (quoting Borel v. Fibreboard Paper Products Corp., 493 F.2d 1076, 1100 (5th Cir. 1973)). Accord, Marquis v. Chrysler Corp., 577 F.2d 624, 636 (9th Cir. 1978); Coughlin v. Capitol Cement Co., 571 F.2d 290, 300 (5th Cir. 1978).
 
 
 28
 Having examined the jury instructions which were given by the trial court in light of these general principles, we conclude that, despite the fact that the instructions as given were not free from fault, the jury verdict in favor of defendant Aeroflex must be affirmed.
 
 
 29
 Plaintiff's breach of contract claim was premised on two contentions: First, that the written agreement dated March 13, 1965, somehow obligated defendant Aeroflex to sell his shares of Baca Float Ranch, Inc. stock for his account for not less than two million dollars in the event that he should fail to repay the Franklin National Bank loan by June 1, 1965; and second, that this agreement superseded or was substituted for the agreement of November 13, 1964. Unfortunately, plaintiff's interpretation of the March 13 agreement is without foundation.
 
 
 30
 The language of the March 13 agreement is clear.[11] This agreement gave Aeroflex the right to sell Merryweather's stock for his account if a buyer willing to pay $2,000,000 could be found before there was any default or foreclosure. Nowhere in the agreement is there any indication that the agreement was intended to abrogate Aeroflex's right to resort to foreclosure under the terms of the pledge in the event that a buyer could not be found. Moreover, the pledge, dated November 16, was executed at the same time as the March 15, 1965 agreement. Thus, this right to attempt to sell Merryweather's shares granted Aeroflex by the March 13 agreement was clearly in addition to Aeroflex's rights under the November 13, 1964, agreement and pledge. By no reasoned interpretation of the language of the March 13 agreement can one argue that this agreement constituted an unconditional obligation on Aeroflex's part to sell Hubert's shares so as to avoid foreclosure. There is simply no language in the agreement imposing such an affirmative duty on Aeroflex.
 
 
 31
 Under Arizona law,[12] where the language of a contract is clear, the interpretation of the contract is a question of law for the court, not a question for the jury. Hadley v. Southwest Properties, Inc., 116 Ariz. 503, 570 P.2d 190 (1977) (en banc); C & T Land & Development Co. v. Bushnell, 106 Ariz. 21, 470 P.2d 102 (1970). In the case at hand, therefore, the trial court erred by instructing the jury that it was their duty to determine what the contract was. See Sleizer v. Arizona Title Insurance & Trust Co., 9 Ariz.App. 361, 452 P.2d 526 (1969). The trial judge should have made certain that the jury understood that it was not authorized to find that the March 13, 1965 agreement, obligated defendant Aeroflex to sell the property for Hubert's account. We consider any error the trial judge made in this regard, however, to have been neutralized by the fact that the jury ultimately reached a conclusion in accord with the correct interpretation of the contract. See Sleizer v. Arizona Title Insurance & Trust Co., supra.
 
 
 32
 Moreover, even if there were any support for appellant's interpretation of the contract, we cannot say, upon our review of the jury instructions as a whole, that the district court in any way prejudiced the plaintiff. The instructions as given were adequate, and there is ample support for the jury's finding that Aeroflex's actions were taken under the pledge and were not in any way a breach of the March 13 agreement.
 
 
 33
 Contrary to appellants' argument to this Court, there was no need for the trial judge to instruct the jury on the law relative to the validity of the foreclosure sale. The validity of the foreclosure sale was no longer properly an issue in the case. Even if appellants are correct in their assertions that the foreclosure sale was not valid, the sale was at most "voidable" until expiration of the period of limitations for challenging the sale. See Brown v. First National Bank of Winslow, 59 Ariz. 392, 129 P.2d 664, 665 (1942).[13] Consequently, absent a timely challenge to its validity, the foreclosure sale must be deemed valid. Jack Waite Mining Co. v. West, 55 Ariz. 301, 101 P.2d 202 (1940); see also Loeb v. Dowling, 349 Mo. 674, 162 S.W.2d 875 (1942). Any direct attack on the foreclosure sale would constitute a claim in conversion which has already been held to be barred by the statute of limitations in this case. See Hubert Merryweather v. The Aeroflex Corp., No. 72-2431 (9th Cir., March 25, 1974) (unpublished mem.).
 
 
 34
 Appellants rather ingeniously attempt to circumvent their failure to timely challenge the validity of the foreclosure sale by drawing a strained analogy between the case at hand and Rutherford v. Carr, 99 Tex. 101, 87 S.W. 815 (1905). There the court refused to allow the defendants to assert the statute of limitations to sustain a void deed as a defense to a cause of action not time-barred. The Rutherford case, however, does not control the case at hand. Here the defendants did not set up the validity of the foreclosure sale as a defense to the breach of contract action in the sense that the validity of the deed was set up in Rutherford.
 
 
 35
 Aeroflex argued that they were not in breach of the March 13 agreement because their rights to attempt to sell Merryweather's shares of stock under the terms of the March 13 agreement lapsed once the foreclosure took place. At this point in the proceedings, whether or not the foreclosure sale was valid is irrelevant to Aeroflex's argument that the March 13 agreement "lapsed" as a result of the foreclosure sale. Aeroflex is simply asserting a fact which should have been self-evident to the plaintiff from the outset: Aeroflex's right to attempt to sell Merryweather's shares of stock pursuant to the March 13 agreement and Aeroflex's right to resort to the foreclosure sale pursuant to the pledge in the event such action should become necessary were mutually exclusive rights. The exercise of one, therefore, would necessarily cause the other to lapse. Aeroflex did not defend on the ground that the foreclosure sale was valid but rather on the ground that the March 13 agreement imposed no duty on them to take any particular course of action and that their action of resorting to foreclosure to which they were entitled under the pledge precluded them from ever taking any action under the March 13 agreement at all. Regardless of whether the foreclosure could have been found invalid pursuant to a timely challenge, by the time this breach of contract action reached the jury, the only question was whether the defendants had pursued their rights under the pledge or under the March 13 agreement. The trial judge, therefore, did not err by refusing to instruct the jury on the law relevant to the validity of the foreclosure sale and he might have confused the jury had he done so. See Brown v. Chapman, supra.
 
 
 36
 Appellants' second challenge to the jury instructions is likewise without merit. Their argument that the trial judge should have instructed the jury on the law relating to a power coupled with an interest is premised on its assertion that Aeroflex, by its letter of July 20, expressly undertook performance of its power under the March 13 agreement to liquidate the corporation and instructed him not to liquidate the corporation. Nothing in the language of this letter, however, permits such a construction.[14] The only reasoned interpretation of the letter was that Merryweather should not proceed in his attempt to liquidate the corporation without the prior approval of Aeroflex. Moreover, it appears that appellants are merely trying to resurrect Merryweather's claim that Aeroflex had acted as his agent and had breached its duties in that capacity. That claim was dismissed in 1971 and that order has not been appealed.
 
 
 37
 In short, appellants' attempt to attack the jury's verdict against them on the grounds that the jury was improperly instructed must fail. The jury had ample instructions to carry out the task assigned it.
 
 
 38
 The judgment is AFFIRMED.
 
 
 
 *
 Honorable Elbert P. Tuttle, Senior U. S. Circuit Judge, United States Court of Appeals, Fifth Circuit, sitting by designation
 
 
 [1]
 Ann Van Cleef and William Brophy, personal representatives of the estate of Hubert Merryweather, the individual who initiated this action by filing a complaint on July 10, 1967, were substituted as parties by order of the district court after Hubert's death
 
 
 [2]
 The corporation owned land in Southern Arizona and a breeding herd of cattle
 
 
 [3]
 The loan was due September 19, 1965, and called for an annual interest of 8%
 
 
 [4]
 As security for any sums George and Laura might have to pay as a result of their guarantee, Hubert granted them a junior pledge of his stock
 
 
 [5]
 This agreement provided in pertinent part:
 
 
 [1]
 Unless on or prior to June 1, 1965, Merryweather shall have prepaid the entire $215,000 principal amount of the loan made to him by the Franklin National Bank, together with the interest thereon, then from and after June 1, 1965 Aeroflex shall have the following rights :
 (a) To attempt to sell Merryweather's stock interest in Baca Float Ranch, Inc. ("the Corporation"), either separately or together with the stockholdings of the other shareholders therein; or
 (b) To take any action which Merryweather would be entitled to take as a stockholder of the Corporation (or under any agreement or arrangement with the other stockholders of the Corporation) in furtherance of the liquidation of the Corporation and the sale of its assets including the Baca Float Ranch.
 (emphasis added.)
 
 
 [6]
 On November 1, 1962, Hubert had agreed with the other shareholders that any shareholder owning 25% of the corporation's stock had the right to require the liquidation and dissolution of Baca Float Ranch, Inc. Pursuant to this agreement, Hubert notified the owners of the remaining 50% of Baca Float Ranch, Inc.'s stock that he was exercising his right to liquidate the corporation
 
 
 [7]
 The letter of July 20, 1965, reads as follows:
 Our client, The Aeroflex Corporation, understands that you have taken some action to attempt to dissolve and liquidate Baca Float Ranch, Inc., which action, of course, was without the prior knowledge or consent of Aeroflex. Please be advised that Aeroflex considers your action as a breach of your agreement with Aeroflex dated March 13, 1965 wherein, inter alia, Aeroflex is given the right after June 1, 1965 to take any action which you would be entitled to take as a stockholder of Baca Float in respect of the matter. Assuming that nothing further has been done apart from your giving of notice to the other stockholders, I trust that, accordingly, you will not further proceed with the matter in any way without express approval of Aeroflex obtained in advance.
 Sincerely,
 Jack E. Brown.
 
 
 [8]
 Aeroflex argues that sufficient notice was provided; however, in light of our disposition of this case, we need not decide that issue. Our conclusion is that even if a timely attack on the validity of the foreclosure sale for insufficient notice could have been made, the statute of limitations has now run and the sufficiency of the notice, like the validity of the foreclosure sale, is not a question relevant to this appeal
 
 
 [9]
 The ranch was sold June 6, 1966, for $3,400,000.00 exclusive of cattle. Aeroflex, George and Laura received $1,996,172.55 between November 1, 1966, and November 18, 1975, for Hubert's 50% interest ($815,310.10 to Aeroflex; $751,955.93 to George; and $408,906.52 to Laura)
 
 
 [10]
 Merryweather reached this amount by the following calculations:
 $2,000,000.00
- 1,180,862.45 - to George and Laura
- 215,000.00 - to Franklin National Bank (principal)
- 30,571.52 - to Franklin National Bank (interest)
- 125,000.00 - to Aeroflex - 10% interest
 -------------
 $ 448,566.03 - to Hubert (damage alleged).
 
 
 [11]
 See note 5 supra
 
 
 [12]
 Although federal procedural rules and law control the manner and method of instructing the jury in federal court, the substance of the instructions is controlled by applicable state law. See Seltzer v. Chesley, 512 F.2d 1030 (9th Cir. 1975)
 
 
 [13]
 Appellants rely on The Valley National Bank v. Stewart, 53 Ariz. 328, 89 P.2d 493 (1939) to support their argument that the foreclosure sale was void. That case, however, involved a direct challenge to a sale of pledged collateral, and the court had no occasion to address the issue of the validity of a collateral attack upon a foreclosure sale after expiration of the prescribed statute of limitations period. Thus, the Stewart case is no precedent for the proposition that a defective foreclosure sale is "void" rather than merely "voidable." See Collier v. General Exchange Insurance Corp., 58 Ariz. 122, 118 P.2d 74, 77 (1941); Kinney v. Lundy, 11 Ariz. 192, 89 P. 496, 499 (1907)
 
 
 [14]
 See note 7 supra